## MEEHAN *v.* VALENTINE.[1]

*(Circuit Court, E. D. Pennsylvania. October 11, 1886.)*

1. PARTNERSHIP—WHAT CONSTITUTES—PARTICIPATION IN PROFITS.
   Participation in the profits does not conclusively establish a partnership relation, but such participation must be considered as evidence tending to establish that relation, and, in the absence of other proof, is to be regarded as sufficient to make out a partnership.

2. SAME—WRITTEN AGREEMENT.
   Where the agreement for the partnership is in writing, its terms must be considered in connection with the participation in the profits, in determining whether the partnership relation has been established or not.

*Assumpsit* by Meehan against Valentine, executor of W. G. Perry, upon promissory notes made by L. W. Counselman & Co., of which firm the defendant's testator was alleged to have been a member. The plea was no partnership. Upon the trial it appeared that the ostensible partners of L. W. Counselman & Co. were L. W. Counselman and Charles Scott. In March, 1880, W. G. Perry loaned L. W. Counselman & Co. $10,000. The terms of their agreement were expressed in the following writing:

L. W. COUNSELMAN.                                           ALBERT L. SCOTT.
                    Office of L. W. Counselman & Co.,
[Trade-mark.]          *Oyster and Fruit Packers,*
                    Cor. Philpot and Will Streets.

BALTIMORE, MD., March 15, 1880.

For and in consideration of loans made and to be made to us by Wm. G. Perry, of Philadelphia, amounting in all to the sum of $10,000, (ten thousand dol-

[1] Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

lars,) for the term of one year from the date of said loans, we agree to pay to the said Wm. G. Perry, in addition to the interest thereon, one-tenth of the net profits over and above the sum of ten thousand dollars on our business for the year commencing May 1, 1880, and ending May 1, 1881,—*i. e.*, if our net profits for said year's business exceed the sum of ten thousand dollars, then we are to pay to said W. G. Perry one-tenth of said excess of profits over and above the said sum of ten thousand dollars; and it is further agreed that. if our net profits do not exceed the sum of ten thousand dollars, then he is not to be paid more than the interest on said loan, the same being added to notes, at the time they are given, which are to date from the time of said loans, and payable one year from date.

[Signed] <span style="float:right">L. W. COUNSELMAN & CO.</span>

Approved by me.
[Signed] L. W. COUNSELMAN.

The loan was renewed in May, 1881, 1882, 1883, 1884, similar agreements being executed. In November, 1884, William G. Perry died, and in April, 1885, the insolvency of the firm was announced. During the years 1880, 1881, 1882, and 1883, moneys were paid to Perry as profits under the terms of the agreement. At the close of the plaintiff's case, defendant's counsel moved for a nonsuit, upon the ground that, under the terms of the writings in evidence, no partnership relation was established.

*John G. Johnson*, for plaintiff.

The original rule, well settled both in England and in the United States, was that a participation in profits constituted a partnership as to third persons. There were certain well-known and special exceptions to this rule, but the rule itself was well settled. This rule was entirely overturned in England in the case of *Cox* v. *Hickman*, and the question of partnership was made to rest upon the intention of the parties themselves. It was universally conceded that this was an entire and complete revolution of an existing and well-settled rule; and parliament, recognizing this fact at once, undertook to regulate the whole subject by legislation, and the law in England is now governed by statute. In this country, in one or two of the states, as, for example, Rhode Island and probably New York, the courts have followed the English case of *Cox* v. *Hickman*, and by a species of judicial legislation overturned the existing rule. In other states they have refused to depart from the original rule. *Rowland* v. *Long*, 45 Md. 439; *Pratt* v. *Langdon*, 97 Mass. 97; *Lockwood* v. *Doane*, 107 Ill. 235; *Sager* v. *Tupper*, 38 Mich. 258. Other of the states, as, *e. g.*, Pennsylvania, have wisely preferred to make the necessary changes in the law by legislation.

The rule in the federal courts is firmly established in accord with the doctrine of the earlier English cases. The supreme court announced its adherence to this rule in *Berthold* v. *Goldsmith*, 24 How. 536; *Beauregard* v. *Case*, 91 U. S. 134.

In the circuit courts the decisions have been in affirmance of the doctrine of *Berthold* v. *Goldsmith*, that the partnership depends on the participation of the profits, and in disaffirmance of the rule of *Cox* v. *Hickman*, that the intention of the parties is to govern. *In re Ward*, 8 Reporter, 136; *In re Francis*, 2 Sawy. 286; *Oppenheimer* v. *Clemmons*, 18 Fed. Rep. 886.

*H. P. Brown, R. C. Dale*, and *S. Dickson*, for defendant.

An agreement to pay a share of profits in consideration of a loan of money does not necessarily impose upon the lender the liabilities of a partner. The question is one of intent; and if, from the whole transaction, it is seen that

the elements of the partnership relation do not exist, the agreement to pay a share of the profits is not conclusive. *Grace* v. *Smith*, 2 W. Bl. 998; *Waugh* v. *Carver*, 2 H. Bl. 235; Lindl. Partn. 20, 25; *Burnell* v. *Hunt*, 5 Jur. 650; Lindl. Partn. 34; *Cox* v. *Hickman*, Lindl. Partn. 40; *Bullen* v. *Sharp*, L. R. 1 C. P. 86; *Mollwo* v. *Court of Wards*, L. R. 4 P. C. 419; *Pooley* v. *Driver*, 5 Ch. Div. 458; *In re Ward*, (U. S. D. C. Tenn.) 8 Reporter, 136; *Burckle* v. *Eckart*, 1 Denio, 337; *Holmes* v. *Railroad Co.*, 5 Gray, 58; *Boston Smelting Co.* v. *Smith*, (R. I.) 11 Cent. Law J. 211; *Hart* v. *Kelley*, 83 Pa. St. 286; *Pleasants* v. *Fant*, 22 Wall. 116; *Einstein* v. *Gourdin*, 4 Wood, 415; *Swann* v. *Sanborn*, 4 Wood, 625; *Oppenheimer* v. *Clemmons*, 18 Fed. Rep. 886; *Richardson* v. *Hughitt*, 76 N. Y. 55; *Cassidy* v. *Hall*, 97 N. Y. 159.

McKENNAN, J., *(orally.)* I have no doubt that, under the law as it stood before the modern decisions, one who participated in the profits of a partnership was to be regarded as a partner, and, as between himself and third persons, was liable for debts contracted by the parties. This was so determined in *Grace* v. *Smith* in the latter part of the last century. The reason of the decision was that a person who received a portion of the profits, and thus withdrew from the creditors of the firm a portion of the fund to which they were entitled, was justly liable for the debts of the firm. This seems to have been the rule without any exception. But afterwards it was held, in the case of an employe who was compensated out of the profits—whether by devoting to him a portion of the profits, or by giving an equivalent out of the profits of a certain sum agreed to be paid him—that that did not constitute a partnership. I can see no reason for this exception. It seems to me the reason why other persons who do not stand in the relation of employes are subject to liability under circumstances precisely the same as those in the cases of employes is not clear. But the exception was made.

Thus the law seems to have stood in England for many years. As is suggested by Mr. Johnson, the law had not been determined by the highest judicial tribunal in Great Britain until 1860. The law was thus declared by the other courts in England until the case of *Cox* v. *Hickman*, which changed the rule as it had existed before, and greatly modified it in the decisions which have been made. If the question was an open one in England, it ought to be regarded as an open question in this country, in so far as the decisions here rested upon the decisions in *Grace* v. *Smith* and *Waugh* v. *Carver*, and by inferior courts in England. But in 1860 it was decided by the house of lords that the rule which prevailed before, founded upon these two early decisions, was wrong; and a new rule, or a modified rule, was established. The rule as determined by those two old cases was that to share in the profits was to make the sharer a partner. As I understand the decision in *Cox* v. *Hickman*, that is not altogether discarded. Participation in the profits may be, and still is to be, considered as evidence tending to establish the partnership relation, and, in the absence of any other proof, is to be regarded as sufficient to make

that out. In *Cox* v. *Hickman* it is still admissible, and is to be considered as evidence touching the alleged relation of partnership, and is sufficient if no other evidence is offered. But, as determined in that case, it is not conclusive. Other circumstances surrounding the transaction (where the agreement is in writing, the terms in which that agreement is couched) are to be considered, in connection with the participation in the profits, in determining whether the partnership relation has been created or not.

Now, that is just the difference between the law as it stood until 1860, in England, and the law as it stands now. Before 1860 a mere participation in the profits, whatever may have been the intention of the parties, whatever may have been their agreement, was conclusive of the liability of the participant to the creditors of the firm. Since then the whole transaction is to be taken into consideration, and from that it is to be determined whether the relation of partner was to be created. As I said before, the American courts, following those early cases, held the rule as it was there enunciated. Since the decision in *Cox* v. *Hickman*, perhaps the American courts have been prompted to consider this question by the light thrown on it by that decision; and there has been unquestionably a great change or modification in this country of the law as it stood before that decision. In many of the states, the rule as it was recognized in England, and established by these earlier cases, was changed, and was made to conform to the decision of the house of lords in *Cox* v. *Hickman;* notably so in Massachusetts, in Rhode Island, in New York, and also in Pennsylvania, because undoubtedly, until within a few years past, the law in Pennsylvania has been held to be as it was in England before the case of *Cox* v. *Hickman*. That is a very striking evidence of the marked progress made by the courts of this country in that branch of the law.

So in the federal courts we have the case reported in 24 How. (*Berthold* v. *Goldsmith*.) That did not involve the scope of the established rule, except in so far as it applied to employes. It was there held by the court that an employe who was to be compensated out of the profits of a partnership did not thereby become a partner. But there are utterances by the court in both directions. They do say that actual participation in the profits creates a partnership between the parties as to third persons, whatever may be the intention in that behalf. But there are expressions in the other direction: that, in determining the actual relation that exists between the parties, all circumstances having a bearing upon that inquiry are to be taken into consideration. But in the cases before Judge HAMMOND and Judge DEADY the law is stated to be that an agreement between persons sharing in certain proportions of the profits of the business does not necessarily make them partners as to each other under circumstances such as to render them liable to third persons. It is said by both of those judges, although I have not been able to verify their statement

by my own examination of the case, that the case in 24 How. is not to be regarded as a decision in favor of the old rule of the common law. That a participation in the profits is *ipso facto* conclusive of a partnership is not established by the supreme court of the United States.

So that, in view of all these decisions, it seems to me to be an open question, or at least one not closed by such authoritative decisions as are binding upon this court; and I think, in view of those which have been presented to the court, the decisions may hereafter reach the point which has been reached by the house of lords in England. . This seems to me to be the most reasonable and fair interpretation of the rule, and, as I am not constrained by any decisions to which I have been referred, I am inclined so to hold the law in this case.

The question is, then, as to the effect of this agreement. That is a matter for the determination of the court. The paper must be taken together, in its entirety, to ascertain what was the intention of the parties, and what was the effect of what they did. In the first place, it is to be considered that this transaction, upon its face, was intended to evidence a mere loan. It was secured, in the ordinary form, by this paper, setting forth the obligation of, or the bargain made by, Counselman & Co., acknowledged as such, and stipulating for its payment at the end of the year. In that connection it is agreed, and clearly, as it seems to me, in consideration of the loan, and as a compensation for the loan, to pay more than the interest thereon. That is all that the agreement amounts to. There is no stipulation here of any right of the lender to participate in the control of the business. There is nothing touching that within the four corners of the agreement; but it evidences a loan of $10,000, an obligation to repay it, and, as compensation for it, the usual rate of interest, and, if the profits of the business exceed $10,000, then 10 per cent. of such profits, in excess of that sum, to be received by the lenders as a compensation for the use of the money by the borrowers. I cannot, therefore, regard it, either in its terms or in its proper significance, as anything else, from beginning to end, than a loan of money, and a provision by the parties for the compensation of the lender for the use of such money, and as in no sense, therefore, indicating an intention on the part of these persons, or any one of them, to change the relation of debtor and creditor (which is that which the paper purports, as I have said) into a contract of partnership, or into an agreement in any way to make the lender responsible for any of the debts contracted by the members of the company. Such being my view of the proper construction of this paper, I must say that, in my judgment, the plaintiffs are not entitled to recover, and the motion for a nonsuit is granted.

NOTE. Subsequently a motion to take off the nonsuit in this case was made by plaintiff's counsel, which motion the court overruled.