No. 27,601.

JOE MEINHART, *Appellee,* v. THE FARMERS STATE BANK, *Appellant.*

(259 Pac. 698.)

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Liability for Refusal to Pay Check—Prerequisites to Action for Damages.* A depositor may, without first suing to recover the amount of the deposit, maintain an action against a bank for damages for injury to his credit where the bank intentionally refuses to honor his checks when he has sufficient funds on deposit to meet them.

2. SAME—*Liability for Refusal to Pay Check—Evidence.* Evidence of specific instances of loss or injury to credit in an action for damages by a depositor against a bank for the dishonor of his checks when it held deposits sufficient to meet them is admissible and competent.

3. SAME—*Deposits—Right to Set-off Unmatured Note.* In order for a bank to avail itself of the privilege of setting off an unmatured note against a deposit it must allege and prove that the depositor was insolvent at the time the set-off was made.

4. SAME—*Liability for Refusal to Pay Check—Right of Depositor to Substantial Damages.* A depositor whose checks are intentionally dishonored by a bank when he has funds therein sufficient to meet them may, upon reasonable proof of injury to his credit on account of such dishonor of checks, be entitled to substantial instead of nominal damages, to be determined by the jury, even if he is not a merchant or trader.

5. SAME—*Liability for Refusal to Pay Check—Instructions.* The giving and refusal to give instructions and other rulings and proceedings complained of in this case examined and held not error.

Appeal from Sedgwick district court, division No. 1; J. EVERETT ALEXANDER, judge. Opinion filed October 8, 1927. Affirmed.

*E. L. Foulke, James B. Nash* and *Roy H. Wasson,* all of Wichita, for the appellant.

*Tom Harley, J. W. Ward* and *George Siefkin,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The Farmers State Bank, of Wichita, appeals to this court from a judgment rendered against it in the district court of Sedgwick county for $750 in favor of the plaintiff, Joe Meinhart, for damages sustained on account of injury to his credit because of the failure and refusal of the bank to honor his checks drawn thereon

Appeal and Error, 4 C. J. p. 1017 n. 48. Banks and Banking, 7 C. J. pp. 655 n. 98, 656 n. 3, 696 n. 32, 33, 35. Checks, 5 R. C. L. 545, 548.

when he had in said bank funds sufficient to cover such checks at the time they were drawn and presented. This case has been to this court before and was reversed and remanded, the syllabus being as follows:

"In an action by a depositor to recover damages from a bank for refusal to honor his checks, the court permitted the plaintiff to introduce evidence that he had been refused loans by other banks and that others had refused to cash his checks, without showing that the refusal of the other banks to make the loans and others to cash his checks was caused or influenced by the dishonor of the checks by the bank from which he sought damages. *Held*, error." (*Meinhart v. Farmers State Bank*, 119 Kan. 321, 239 Pac. 769.)

On the second trial of the case the evidence is said to have been substantially the same as in the former trial, with the exception of proof being offered and introduced to the effect that credit was refused because the defendant had refused to honor plaintiff's checks.

The plaintiff was a truck farmer operating an eighty-acre farm near Wichita, and had for many years maintained a small account at the defendant bank. On January 2, 1923, he borrowed $200 from said bank and gave his note therefor, due on July 1, 1923, and deposited said $200 to his account in said bank. Thereafter, from time to time he issued his checks thereon, several of which were dishonored and not paid by said bank. He therefore brought this action against the bank, alleging damages in the sum of $5,000. Originally, his petition contained specific items of damage—protest fees and failure to consummate purchases and carry out business plans because of checks being dishonored—but during the progress of the trial these specific items were on motion of the defendant stricken out of the petition and no evidence was introduced as to any of them. The defendant answered by general denial, admitting its organization and that the plaintiff had an account with it, and alleged that at the time the loan of $200 was made to him he represented that he was needing the money for the purpose of conducting his farm work on the farm he had rented in the county and where he expected to put in spring crops; that shortly thereafter the officers of the bank learned that he had not rented such farm, but was selling his personal property except his household goods and was planning to leave the county; that the president of the bank insisted upon his paying the note or securing it if he were going to leave the county. He brought in to the bank the proceeds of his auction sale, amounting to more than $300, and deposited the same in the bank, and said he would try to get his father-in-law to sign his note as security. The

answer alleges that on February 27, 1923, after the refusal of the father-in-law to sign the note, the bank credited $200 of plaintiff's deposit on the note, which paid it in full, and credited a rebate of unearned interest amounting to $5.48, which left a balance in his account of $7.11. The bank further alleges in its answer that it honored several small checks after that date until the balance was exhausted and then dishonored all checks coming after that. This action was brought on May 23, 1923. It was tried to a jury with the result above stated, and additional findings were made by the jury to the effect that none of the damages awarded were given as exemplary damages. Motion for a new trial was overruled, and our attention is directed by the defendant to many points where error is claimed to have been committed in the proceedings.

It is contended that the court erred in excluding the testimony of the president of the bank giving the conversation between him and the plaintiff and the representations made by the plaintiff at the time the loan was made and the note given. Whether this conversation and the representations of the plaintiff would, strictly speaking, come under the rule to be excluded because of tending to contradict or vary the terms of a written instrument need not here be decided because the president related it in giving the conversation at the plaintiff's home after the sale when urging the plaintiff to secure or pay the note and reminding the plaintiff of how the loan was procured, and the plaintiff specifically denied there was any such reference by the president in such conversation at his home, the alleged conversation in this way reaching the jury just the same. An examination of the many cases cited in this connection shows that in practically all of them the representations made to secure the loan were made in writing. There was certainly no error in refusing to let the bank president relate his conversation with the plaintiff's father-in-law in the absence of the plaintiff.

Defendant complains of the court admitting incompetent, irrelevant and immaterial testimony, particularly that of R. D. McKay, engaged in the automobile business, who told of having sold Mr. Meinhart an automobile and having taken a check on defendant bank for $60 which was returned to him dishonored. The following are some of the questions and answer in this connection:

"Q. What did you do when you got in touch with him, Mr. McKay? A. I insisted that Mr. Meinhart pay the check and he and I went over to the bank to see why it wasn't paid because he told me he had the money in the bank.

"Q. Will you state the substance of the conversation? A. I asked Mr. Limbocker [bank officer] why he wouldn't pay the check, when Mr. Meinhart told me the money was there in the bank to be paid with, and Mr. Limbocker said he didn't have any money in the bank and I turned around and asked Mr. Meinhart and he said he did have it there. I asked Mr. Limbocker why he wouldn't pay the check, and he says, 'Mr. Meinhart can tell you why.' Very curt about it.

"Q. Did you have any further business with him? A. Took his automobile away from him.

"Q. Now, after the check was dishonored, did Mr. Meinhart have any credit with your concern? A. He had no credit with us.

"Q. Why not? A. Because his check was turned down, of course.

"Q. After the check was dishonored did Mr. Meinhart attempt to get you to extend further credit? A. Yes.

"Q. Did you extend such credit to him. A. No."

This was the line of testimony that was given by the plaintiff because of the decision of this court in the former review of the case. It was apparently given to meet the requirement by showing an injury because of the loss of credit, and we think it was competent for that purpose.

Defendant urges that plaintiff is estopped to claim damages, because he has ratified the action of the bank by accepting and checking out the $5.48 of unearned interest returned to his account, has accepted the benefit of the payment of the note, and has not commenced an action to recover the $200 appropriated by the bank from his account. The theory of the plaintiff was that he was checking against his balance on deposit in the bank, including the $200 misappropriated as he claimed, and one would hardly under such circumstances consider the payment and return of the note an acceptance of a benefit which would estop him from objecting thereto. True, he could have brought an action against the bank simply to recover the $200 claimed to have been misappropriated—in other words, could have had an action on contract—but none of the cases cited indicates any requirement to do so before suing for damage. The four Kansas cases cited in this connection are where plaintiff has ratified the contract by accepting and retaining some of the fruit or benefits of the deal. The courts will not tolerate any such inconsistent course. But there is no such inconsistency here and hence no estoppel.

"A depositor, suing a bank on an implied contract for its wrongful refusal to pay checks, when he had on deposit funds to meet them, may recover damage for injury to his credit." (*Levine v. State Bank,* 141 N. Y. S. 596, syl. ¶ 3.)

Meinhart v. Farmers State Bank.

"A bank is liable in damages resulting from a nonfulfillment of its contract to pay the money of its depositor upon demand to the same extent and for the same reason that other persons are liable for the nonfulfillment of contracts. The measure of its liability depends on the circumstances of each individual case. A petition, therefore, which states that a bank, in which the plaintiff had money on deposit, neglected or refused to honor his check or pay it upon demand, states a cause of action." (*Kleopfer v. Bank,* 65 Kan. 774, syl., 70 Pac. 880.)

"In addition to the right to recover his deposit in case of refusal of the bank to pay, the depositor may also sue in tort for the injury resulting from such refusal." (7 C. J. 696.)

It is contended that the bank had a perfect right to appropriate the money of the plaintiff on deposit with it to pay the note not then due, because the plaintiff was insolvent at the time of such appropriation. It was held in the case of *Docking v. Commercial National Bank,* 118 Kan. 566, 235 Pac. 1044, that "a bank may set off as against the deposit account of an insolvent depositor matured and unmatured obligations of the depositor to the bank held by the bank at the time of insolvency," but the bank was officially declared insolvent and its affairs were in the hands of a receiver. There are many ways by which a person or corporation can be declared insolvent, and any one of the orderly ways would be sufficient to bring the case under the rule above stated. No such finding was made in this case, and there was no allegation or conclusive showing to that effect, hence we must conclude that the bank in this case exceeded its authority in using the deposit to pay an unmatured note.

The giving and refusal to give instructions and the refusal to submit to the jury certain questions were in perfect harmony with the theory upon which the case was tried, and whether or not that theory was correct depends upon the all-important question in this case as to the kind and amount of damages to which the plaintiff is entitled, if any. Holding, as we do, that the bank was without authority to appropriate the deposit to the payment of the unmatured note, the plaintiff was entitled to recover some damages, at least nominal. Some of the authorities, as those from California, limit to nominal because of a special statute. In the case of *Third Nat. Bank v. Ober,* 178 Fed. 678, it was held:

"A depositor, whose check is dishonored by a bank when he has funds on deposit to meet it, has a right of action against the bank for a violation of his legal rights, and is entitled to recover at least nominal damages. If he

is a merchant or trader, it will be presumed, without further proof, that substantial damages are sustained, and such damages may be recovered; but, if he is not a merchant or trader, there is no such presumption, and where the act of the bank was without malice, and simply the result of a clerical error, he is entitled to recover only nominal damages, unless special damages are alleged and proved." (Syl.)

The plaintiff in this case was admittedly not a merchant or trader. The closing paragraph of the opinion just cited will give us a slight knowledge of the facts to which the learned judge was applying the law above quoted:

"A mere technical violation of a right is not just basis for a recovery of general and substantial damages, where no actual injury is shown, and none appear to follow as the natural and probable consequences of the act. In the case before us there was no averment of particular circumstances or special injury, aside from the protest fees, and none were proved. On the contrary, witnesses of plaintiff, who knew of the dishonoring of his check, testified that his credit was not injured." (p. 680.)

In the instant case there was positive testimony that there was injury to his credit, rather than the opposite, and there were averments and proof of such loss and injury.

"Plaintiff having sufficient funds in the bank and the failure of the bank to honor his check being due to its mistake, where plaintiff proved clearly that he was subsequently refused credit by the person to whom he gave the check, he was entitled to have submitted to the jury the question of the amount of damages which he had suffered." (*Schein v. Public Bank of New York City*, 167 N. Y. S. 384, syl.)

Some of the strongest cases cited in favor of the damages being only nominal refer to the dishonor of the check being an oversight, a mistake, or excusable mistake. (*Friedman v. Edgewater State Bank*, 215 Ill. App. 36; *Katz v. Pacific Bank*, 209 N. Y. S. 497.) The general rule and the weight of authority appear to us to be in favor of substantial damages rather than nominal damages; and when submitted to the jury without specific testimony as to amount they are sometimes called temperate damages.

"It is a question more difficult of application than of general definition to determine what the measure of damages is for the refusal by a bank to pay a check when it has in its hands sufficient funds of the drawer for that purpose. It is held by the authorities that in such a case the plaintiff's recovery is not limited to nominal damages, but he is entitled to recover general compensatory damages. The depositor, by proving special loss, is always entitled to recover substantial damages. And even where the depositor is unable to show any special loss or injury the authorities seem to be almost uniformly to the

effect that he is not limited to mere nominal damages. If no special damage is proved, the jury may give such temperate damages as they may conceive to be a reasonable compensation for the injury which must have been sustained." (5 R. C. L. 548.)

The amount of such damages is to be determined by the sound discretion and dispassionate judgment of a jury:

"In many cases of tort, however, the injury complained of is of such a nature that compensation cannot be awarded by any precise pecuniary standard and there is no legal measure of damages, because the injury does not consist of pecuniary elements, or elements of which the value can be measured or expressed in money. The compensation which shall be allowed for an injury of this character is by the common law referred to the sound discretion and dispassionate judgment of a jury." (1 Sutherland on Damages, § 2.)

An action of this kind, when the dishonor of the checks is done not by mistake but intentionally with a purpose of benefiting the bank financially, is very similar to actions for libel and slander, and therefore damages should be substantial rather than nominal.

"But the better authority seems to be, that, even if such actual loss or injury is not shown, yet more than nominal damages shall be given. It can hardly be possible that a customer's check can be wrongfully refused payment without some impeachment of his credit, which must in fact be an actual injury, though he cannot from the nature of the case furnish independent distinct proof thereof. It is as in cases of libel and slander, which description of suit, indeed, it closely resembles, inasmuch as it is a practical slur upon the plaintiff's credit and repute in the business world. Special damage may be shown, if the plaintiff be able; but, if he be not able, the jury may nevertheless give such temporary damages as they conceive to be a reasonable compensation for that indefinite mischief which such an act must be assumed to have inflicted, according to the ordinary course of human events. Exemplary damages may be given when the failure to pay is malicious or the result of gross indifference; but they shall not be given unless the bank was guilty of fraud, malice, gross negligence or oppression." (2 Morse on Banks and Banking, 5th ed. § 458. See, also, *Commercial Nat. Bank v. Latham,* 29 Okla. 88.)

We conclude that under the facts and circumstances of this case the plaintiff was entitled to recover substantial damages instead of nominal; that the evidence justified such recovery notwithstanding he was not a merchant or trader; that the amount recovered was not excessive; and we find no error in the giving or refusal to give instructions, and no cause for reversal in any of the other assignments of error.

The judgment is affirmed.