ST.. PAUL, J.
 

 This is an action to recover the amount of a special deposit of $6,081.21 in the defendant bank, credited to
 
 *694
 
 the account of “James Galloway, Special,” and appropriated by defendant to the full payment of one, and partial payment of another, of two notes signed by Galloway & Whitten, a partnership engaged in drilling oil wells, and composed of this plaintiff and his son-in-law. Which said notes contained the usual clause authorizing the bank to apply to the payment thereof any funds on deposit to the credit of the drawer or other party to the notes.
 

 Now the funds to the credit of the account of “James Galloway, Special,” were derived entirely from' the sale of certain real estate and of an oil lease, all belonging to James Galloway individually and not to the partnership of Galloway & Whitten, and hence were the property of James Galloway and not of the partnership.
 

 Of course the mandate contained in the notes of the partnership, a separate legal .entity from the members who composed it, did . not authorize the bank to apply to the payment of the partnership’s notes the money belonging to the individual members thereof. Raymond v. Palmer, 41 La. Ann. 425, 6 So. 692, 17 Am. St. Rep. 398; 3 R. C. L. 591, “Banks,” § 219; 7 Corp. Jur. 659, “Banks,” § 357.
 

 Hence the defendant contends that said special deposit by Galloway was made for the express purpose of taking care of said notes, and in proof thereof relies upon a letter of Galloway to the bank inclosing a cheek for the major part of the price of the oil lease, just then sold, in which the bank is directed to “collect and credit this cheek to account of Galloway & Whitten, better make special item, however handle as you please.”
 

 But the fact is that said special deposit was made pursuant to an agreement made between Galloway and the three largest creditors of Galloway & Whitten, including the bank, that, in preference to forcing the sale of said assets, said Galloway should be allowed to sell the same when a favorable opportunity offered and distribute the proceeds pro rata among all the creditors.
 

 I.
 

 As the special deposit was 'not made by Galloway for the express purpose, as claimed by defendant, of paying the notes held by it, but on the contrary for the express purpose of -distributing the same ratably among all the creditors of Galloway & Whitten, said deposit cannot be appropriated by the bank for its own special benefit alone, and to al-low it to do so would amount to a breach of trust towards Galloway and towards the other creditors of Galloway & Whitten. Merchants’ & Farmers’ Bank & Trust Co. v. Hammond Motors Co. Inc., 164 La. 57, 113 So. 763.
 

 II.
 

 When plaintiff drew checks on defendant in favor of the several creditors of Galloway & Whitten, each for his pro rata (18 per cent.), the defendant refused payment thereon, and said checks were protested and returned (all but a few).
 

 The trial judge therefore properly gave judgment against said defendant for the amount of said deposit, since defendant had no right to appropriate it as it did. But we think the judge improperly refused to allow the defendant credit for the check which plaintiff had sent it for its pro rata of the fund, to wit, $1,260. This amount was clearly due the defendant both under the agreement under which the special deposit had been made, and because of the check given it by plaintiff and drawn against said deposit. The amount of the judgment against defendant should therefore be reduced from $6,081.-21 to $4,821.21.
 

 
 *696
 
 III.
 

 As the defendant dishonored plaintiff’s cheeks, though it had on deposit sufficient funds to his credit to meet the same, we think the plaintiff is entitled to damages on that account. Spearing v. Whitney-Central National Bank, 129 La. 607, 56 So. 548; Levin v. Commercial Germania Trust & Savings Bank, 133 La. 492, 63 So. 601; Ott v. Kentwood Bank, 152 La. 962, 94 So. 899.
 

 But we think $1,500, allowed by the district judge, is too much. We have said enough heretofore to show that defendant’s credit and that of the partnership were at a low ebb, since he was already discussing with the creditors the means of deferring payment and had obtained from them an agreement not to press their claims. We are speaking here ■ of commercial credit; that is to say, ability to pay. His personal integrity was, of course, not impugned since the creditors were willing that he should personally attend to the liquidation of his affairs. There is nothing in the evidence which leads us to conclude that that commercial credit was, or could be, adversely affected by what occurred. But we do think that plaintiff was unduly humiliated and annoyed by having his checks turned down, when in fact he was trying to do the right thing towards his creditors, and was by this occurrence put in the light of deceiving them and issuing them worthless checks. It is true that the matter was duly explained to them, and they understood that the return óf the checks was due to no fault of his. Nevertheless the fact remains that he did have to explain the matter and was subjected to humiliation and annoyance by reason thereof. Our conclusion is that an allowance of $500 would be sufficient and reasonable under the circumstances and that the damages allowed by the trial judge should be reduced to that sum.
 

 Decree.
 

 It is therefore ordered that the judgment in favor of plaintiff on the balanpe of account be now reduced from $6,081.21 to $4,821.21, with legal interest from October 31, 1927, and that the judgment in favor of plaintiff for damages be now reduced from $1,500 to $500, with legal interest from the same date.
 

 And, as thus amended, said judgment is affirmed; plaintiff to pay the costs of this appeal, and defendant to pay the costs of the lower court.
 

 O’NIELL, O. J., absent, takes no part.