418 P.2d 191

**Richard A. LOUCKS and Del Martinez,
Plaintiffs-Appellants,**

v.

**ALBUQUERQUE NATIONAL BANK, a corporation, and W. J. Kopp, Defendants-Appellees.**

No. 7806.

Supreme Court of New Mexico.

Aug. 29, 1966.

Rehearing Denied Sept. 23, 1966.

O. R. Adams, Jr., Albuquerque, for appellants.

Modrall, Seymour, Sperling, Roehl & Harris, Henry G. Coors, Albuquerque, for appellees.

## OPINION

La FEL E. OMAN, Judge, Court of Appeals.

The plaintiffs-appellants, Richard A. Loucks and Del Martinez, hereinafter referred to as plaintiffs, Mr. Loucks and Mr. Martinez, respectively, were partners engaged in a business at Albuquerque, New Mexico, under the partnership name of L & M Paint and Body Shop.

By their complaint they sought both compensatory and punitive damages on behalf of the partnership, on behalf of Mr. Loucks, and on behalf of Mr. Martinez against the defendants-appellees, Albuquerque National Bank and W. J. Kopp, hereinafter referred to as defendants, the bank, and Mr. Kopp, respectively.

Prior to March 15, 1962 Mr. Martinez had operated a business at Albuquerque, New Mexico, under the name of Del's Paint and Body Shop. He did his banking with defendant bank and he dealt with Mr. Kopp, a vice-president of the bank.

On February 8, 1962 Mr. Martinez borrowed $500 from the bank, which he deposited with the bank in the account of Del's Paint and Body Shop. He executed an installment note payable to the bank evidencing this indebtedness.

On March 15, 1962 the plaintiffs formed a partnership in the name of L & M Paint and Body Shop. On that date they opened a checking account with the bank in the name of L & M Paint and Body Shop and deposited $620 therein. The signatures of both Mr. Loucks and Mr. Martinez were required to draw money from this account. The balance in the account of Del's Paint and Body Shop as of this time was $2.67. This was drawn from this account by a

cashier's check and deposited in the account of L & M Paint & Body Shop on April 18, 1962.

Two payments of $50.00 each were made on Mr. Martinez' note of February 8, 1962, or on notes given as a renewal thereof. These payments were made by checks drawn by plaintiffs on the account of L & M Paint and Body Shop. The checks were payable to the order of the bank and were dated June 29, 1962 and August 28, 1962. A subsequent installment note was executed by Mr. Martinez on October 17, 1962 in the principal amount of $462 payable to the order of the bank. This was given as a replacement or renewal of the prior notes which started with the note of February 8, 1962.

Mr. Martinez became delinquent in his payments on this note of October 17, 1962 and the bank sued him in a Justice of the Peace court to recover the delinquency.

As of March 14, 1963 Mr. Martinez was still indebted to the bank on this note in the amount of $402, and on that date, Mr. Kopp, on behalf of the bank, wrote L & M Paint and Body Shop advising that its account had been charged with $402 representing the balance due "on Del Martinez installment note," and the indebtedness was referred to in the letter as the "indebtedness of Mr. Del Martinez."

The charge of $402 against the account of L & M Paint and Body Shop was actually made on March 15, 1963, which was a Friday.

Although Mr. Martinez at one time testified he telephoned Mr. Kopp on either Friday or the following Monday about this charge, when he was questioned more closely he admitted he discussed the matter with Mr. Kopp by telephone on Friday. Mr. Loucks testified that as he recalled, it was on Monday. Both plaintiffs went to the bank on Monday, March 18, and talked with Mr. Kopp. They both told Mr. Kopp that the indebtedness represented by the note was the personal indebtedness of Mr. Martinez and was not a partnership obligation. Mr. Loucks explained that they had some outstanding checks against the partnership account. Mr. Kopp refused to return the money to the partnership account. There was evidence of some unpleasantness in the conversation. The partnership account, in which there was then a balance of only $3.66, was thereupon closed by the plaintiffs.

The bank refused to honor nine, and possibly ten, checks drawn on the account and dated between the dates of March 8 and 16, inclusive.

The checks dated prior to March 15 total $89.14, and those dated March 15 and 16 total $121.68. These figures do not include the tenth check to which some reference was made, but which was not offered into evidence and the amount of which does not appear in the record.

The case came on for trial before the court and a jury. The court submitted the case to the jury upon the question of whether or not the defendants wrongfully made the charge in the amount of $402 against the account of L & M Paint and Body Shop. The allegations of the complaint concerning punitive damages and compensatory damages, other than the amount of $402 allegedly wrongfully charged by the defendants against the partnership account, were dismissed by the court before the case was submitted to the jury. The jury returned a verdict for the plaintiffs in the amount of $402.

The plaintiffs have appealed and assert error on the part of the trial court in taking from the jury the questions of (1) punitive damages, (2) damages to business reputation and credit, (3) damages for personal injuries allegedly sustained by Mr. Loucks, and (4) in disallowing certain costs claimed by plaintiffs.

Plaintiffs rely upon our statements in the case of Sanchez v. Gomez, 57 N.M. 383, 259 P.2d 346 as support for their position that they had a constitutional right to have all questions submitted to the jury. As stated in Sanchez v. Gomez, supra, the trial court may properly remove a case from consideration by the jury only when no true issues of fact have been presented. We also stated in that case that the right of jury trial on any issue of fact presented by the pleadings is provisional, and if the evidence fails to form such issue of fact the right of jury trial disappears.

When the evidence on an issue of fact tendered by the pleadings wholly fails to form such issue, then there is no issue to submit to the jury. Also, when the evidence on an issue of fact tendered by the pleadings is undisputed, and the inferences to be drawn therefrom are plain and not open to doubt by reasonable men, the issue is no longer one of fact to be submitted to the jury, but becomes a question of law. Valdez v. Gonzales, 50 N.M. 281, 176 P.2d 173; Goldenberg v. Village of Capitan, 53 N.M. 137, 203 P.2d 370; Ferguson v. Hale, 66 N.M. 190, 344 P.2d 703; Romero v. Shelton, 70 N.M. 425, 374 P.2d 301. It is entirely within the province of the court to determine all questions of law, including the legal sufficiency of any asserted claim or defense, the admissibility of any evidence offered on any proper issue of the case, and the sufficiency of the evidence adduced to raise a question of fact to be submitted to the jury. In determining whether or not a question of fact has been raised on any proper issue in the case, the trial court must view the evidence in its most favorable aspect to support the party raising the issue, and indulge all reasonable inferences or conclusions to be drawn from the evidence. If reasonable minds cannot differ as to the result to be reached from a consideration of the evidence, and all infer-

ences to be drawn therefrom, then, and only then, does the issue become one of law to be determined by the court and to be taken from the jury. Goldenberg v. Village of Capitan, supra; Monden v. Elms, 73 N.M. 256, 387 P.2d 458; Tevis v. McCrary, 75 N.M. 165, 402 P.2d 150. See also the recent case of Riseling v. Potash Mines Transp. Co., 76 N.M. 544, 417 P.2d 38, decided July 18, 1966.

The plaintiffs, as partners, sought recovery on behalf of the partnership of $402 allegedly wrongfully charged against the partnership account. This question was submitted to the jury, was decided in favor of the partnership, and against the defendants, and no appeal has been taken from the judgment entered on the verdict. They also sought recovery on behalf of the partnership of $5,000 for alleged damages to its credit, good reputation, and business standing in the community, $1,800 for its alleged loss of income, and $14,404 as punitive damages.

Each partner also sought recovery of $5,000 for alleged damages to his personal credit, good reputation and business standing. Mr. Martinez sought punitive damages individually in the amount of $10,000, and Mr. Loucks sought punitive damages individually in the amount of $60,000. Mr. Loucks also sought $25,000 by way of damages he allegedly sustained by reason of an ulcer which resulted from the wrongful acts of the defendants.

The parties have argued the case in their respective briefs and in their oral arguments upon the theory that the questions here involved, except for Point IV, which deals with the disallowance by the trial court of some claimed costs, are questions of the damages which can properly be claimed as a result of a wrongful dishonor by a bank of checks drawn by a customer or depositor on the bank, and of the sufficiency of the evidence offered by plaintiffs to support their claims for damages.

Both sides quote § 50A–4–402, N.M.S.A. 1953, which provides as follows:

"A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case."

It would appear that the first question to be resolved is that of the person, or persons, to whom a bank must respond in damages for a wrongful dishonor. Here, the account was a partnership account, and if there was in fact a wrongful dishonor of any checks, such were partnership checks.

We have adopted the Uniform Commercial Code in New Mexico. In § 50A–4–402, N.M.S.A.1953, quoted above, it is clearly stated that a bank "is liable to its customer." In § 50A–4–104(1) (e), N.M.S.A. 1953, entitled "Definitions and index of definitions" it is stated that:

"(1) In this article unless the context otherwise requires

"(e) 'Customer' means any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank; * * *"

This requires us to determine who is a "person" within the contemplation of this definition. Under part II, article I of the Uniform Commercial Code, entitled "General Definitions and Principles of Interpretation," we find the term "person" defined in § 50A–1–201(30), N.M.S.A.1953 as follows: "'Person' includes an individual or an organization * * *."

Subsection (28) of the same section expressly includes a "partnership" as one of the legal or commercial entities embraced by the term "organization."

It would seem that logically the "customer" in this case to whom the bank was required to respond in damages for any wrongful dishonor was the partnership. The Uniform Commercial Code expressly regards a partnership as a legal entity. This is consistent with the ordinary mercantile conception of a partnership. I Rowley, Partnership, § 1.3A at 14 (2d Ed. 1960). See also § 1.3D at 18 of this same volume. Bank of Buffalo v. Thompson, 121 N.Y. 280, 24 N.E. 473; Meehan v. Valentine, 145 U.S. 611, 12 S.Ct. 972, 36 L.Ed. 835 (Affirming 29 F. 276); Gleason v. Sing, 210 Minn. 253, 297 N.W. 720; Burdick, Some Judicial Myths, 22 Harv.L.Rev. 393, 394 (1909); Pound, The Scope and Purpose of Sociological Jurisprudence, 24 Harv. L.Rev. 591, 604 (1911); Crane, The Uniform Partnership Act—A Criticism, 28 Harv.L.Rev. 762 (1915); Lewis, The Uniform Partnership Act—A reply to Mr. Crane's Criticism (pts. 1 & 2), 29 Harv. L.Rev. 158, 291 (1915–16); Crane, The Uniform Partnership Act and Legal Persons, 29 Harv.L.Rev. 838 (1916); Note, 8 Colum.L.Rev. 391 (1908); Note, 13 Colum.L.Rev. 143 (1913).

The Uniform Partnership Act, which has been adopted in New Mexico and appears as chapter 66, article I, N.M.S.A.1953, recognizes that a partnership has a separate legal entity for at least some purposes. See Attaway v. Stanolind Oil & Gas Company, 232 F.2d 790 (10th Cir. 1956); I. Rowley, Partnership, § 1.3F at 22 (2d Ed. 1960); Jensen, Is a Partnership Under the Uniform Partnership Act an Aggregate or an Entity, 16 Vand.L.Rev. 377 (1963).

Suits may be brought in New Mexico by or against the partnership as such. Sections 21–6–5 and 21–1–1(4) (o), N.M.

S.A.1953. A partnership is a distinct legal entity to the extent that it may sue or be sued in the partnership name. National Surety Co. v. George E. Breece Lumber Co., 60 F.2d 847 (10th Cir. 1932).

The case of Harris v. Singh, 34 N.M. 470, 283 P. 910, so heavily relied upon by plaintiffs for their position that the partnership is not liable on a note executed by one partner in his own name, even though such be for partnership purposes, clearly recognizes that in the situation there involved the partnership entity is separate and distinct from the entities of the individual partners.

In the case of Galloway v. Vivian State Bank, 168 La. 691, 123 So. 126, 65 A.L.R. 1308, the defendant bank applied funds in a special account in the name of one partner toward the payment of partnership notes. In holding the application wrongful, the Louisiana court stated in part as follows:

"* * *

"Now the funds to the credit of the account of 'James Galloway, Special,' were derived entirely from the sale of certain real estate and of an oil lease, all belonging to James Galloway individually and not to the partnership of Galloway & Whitten, and hence were the property of James Galloway and not of the partnership.

"[1] Of course the mandate contained in the notes of the partnership, a separate legal entity from the members who composed it, did not authorize the bank to apply to the payment of the partnership's notes the money belonging to the individual members thereof. Raymond v. Palmer, 41 La.Ann. 425, 6 So. 692, 17 Am. St.Rep. 398; 3 R.C.L. 591, 'Banks,' § 219; 7 Corp.Jur. 659, 'Banks,' § 357."

We appreciate that the basic law in Louisiana is the civil law. We also appreciate that a partnership is not considered a distinct legal entity to the extent that a natural person or a corporation is so regarded in the law, but here we are dealing only with the question of its separateness as a customer or depositor of the bank, and its rights to any damages flowing from a wrongful dishonor of its checks drawn on its account. The relationship between a bank and its depositor is a contractual relationship of debtor and creditor. Daughtry v. International Bank of Commerce, 18 N.M. 119, 126, 134 P. 220; State ex rel. City of Las Vegas v. Sandoval, 34 N.M. 50, 52, 277 P. 31; 5A Michie, Banks and Banking, § 1, p. 1. A partnership can enter into a contract. See § 66-1-9, N.M.S.A.1953; 40 Am.Jur., Partnership, § 152 at 237. As shown above, a partnership can enter into the contractual relationship of debtor and creditor, as a customer of the bank, in accordance with the express provisions of the Uniform Commercial Code.

"* * *

"While a copartnership at common law was not considered a distinct entity from the partners composing it, the modern tendency is the other way, i. e., to treat a partnership as an entity distinct from and independent of the individuals composing it. 20 R.C.L. p. 804, § 6, and cases under note 16." Gleason v. Sing, 297 N.W. at 722.

The question of whether a wrongful dishonor is to be considered as a breach of contract or as a breach of a tort duty was apparently avoided by the drafters of the Uniform Commercial Code by using the words "wrongful dishonor." See Uniform Commercial Code, § 4–402, Comment 2.

We have not overlooked the fact that tortious conduct may be tortious as to two or more persons, and that these persons may be the partnership and one or more of the individual partners. II Rowley, Partnership, § 49.2J at 278 (2d Ed.1960).

The relationship, in connection with which the wrongful conduct of the bank arose, was the relationship between the bank and the partnership. The partnership was the customer, and any damages arising from the dishonor belonged to the partnership and not to the partners individually.

■ The damages claimed by Mr. Loucks as a result of the ulcer, which allegedly resulted from the wrongful acts of the defendants, are not consequential damages proximately caused by the wrongful dishonor as contemplated by § 50A–4–402, N.M.S.A.1953. In support of his right to recover for such claimed damages he relies upon the cases of Jones v. Citizens Bank of Clovis, 58 N.M. 48, 265 P.2d 366 and Weaver v. Bank of America Nat. Trust & Sav. Ass'n., 59 Cal.2d 428, 30 Cal.Rptr. 4, 380 P.2d 644. The California and New Mexico courts construed identical statutes in these cases. The New Mexico statute appeared as § 48–10–5, N.M.S.A. 1953. This statute was repealed when the Uniform Commercial Code was adopted in 1961.

■ Assuming we were to hold that the decisions in those cases have not been affected by the repeal of the particular statutory provisions involved and the adoption of the Uniform Commercial Code, we are still compelled by our reasoning to reach the same result, because the plaintiffs in those cases were the depositor in the California case and the administratrix of the estate of the deceased depositor in the New Mexico case. In the present case, Mr. Loucks was not a depositor, as provided in the prior statute, nor a customer, as provided in our present statute. No duty was owed to him personally by reason of the debtor-creditor relationship between the bank and the partnership.

■ It is fundamental that compensatory damages are not recoverable unless they proximately result from some viola-

tion of a legally-recognized right of the person seeking the damages, whether such be a right in contract or tort. Hedrick v. Perry, 102 F.2d 802 (10th Cir. 1939); 72 Am.Jur.2d, Damages, §§ 1, 2, and 11; 25 C.J.S. Damages §§ 18 and 19.

Insofar as the damage questions are concerned, we must still consider the claims for damages to the partnership. As above stated, the claim on behalf of the partnership for the recovery of the $402 was concluded by judgment for plaintiffs in this amount. This leaves (1) the claim of $5,000 for alleged damage to credit, reputation and business standing, (2) the claim of $1,800 for alleged loss of income, and (3) the claim of $14,404 as punitive damages.

 The question with which we are first confronted is that of whether or not the customer, whose checks are wrongfully dishonored, may recover damages merely because of the wrongful dishonor. We understand the provisions of § 50A–4–402, N.M.S.A.1953 to limit the damages to those proximately caused by the wrongful dishonor, and such includes any consequential damages so proximately caused. If the dishonor occurs through mistake, the damages are limited to actual damages proved.

It is pointed out in the comments to this section of the Uniform Commercial Code that:

" * * *

"This section rejects decisions which have held that where the dishonored item has been drawn by a merchant, trader or fiduciary he is defamed in his business, trade or profession by a reflection on his credit and hence that substantial damages may be awarded on the basis of defamation 'per se' without proof that damage has occurred. * * *" Uniform Commercial Code, § 4–402, Comment 3.

 If we can say as a matter of law that the dishonor here occurred through mistake, then the damages would be limited to the "actual damages proved." Even if we are able to agree, as contended by defendants in their answer brief, that the defendants acted under a mistake of fact in " * * * that Mr. Kopp acting on behalf of the bank thought that the money was invested in the partnership and could be traced directly from Mr. Martinez to the L & M Paint and Body Shop," still defendants cannot rely on such mistake after both Mr. Martinez and Mr. Loucks informed them on March 15 and 18 that this was a personal obligation of Mr. Martinez and that the partnership had outstanding checks. At least it then became a question for the jury to decide whether or not defendants had wrongfully dishonored the checks through mistake.

 The problem then resolves itself into whether or not the evidence offered and received, together with any evidence

properly offered and improperly excluded, was sufficient to establish a question as to whether the partnership credit and reputation were proximately damaged by the wrongful dishonors. There was evidence that ten checks were dishonored, that one parts dealer thereafter refused to accept a partnership check and Mr. Loucks was required to go to the bank, cash the check, and then take the cash to the parts dealer in order to get the parts; that some persons who had previously accepted the partnership checks now refused to accept them; that other places of business denied the partnership credit after the dishonors; and that a salesman, who had sold the partnership a map and for which he was paid by one of the dishonored checks, came to the partnership's place of business, and ripped the map off the wall because he had been given "a bad check for it."

This evidence was sufficient to raise a question of fact to be determined by the jury as to whether or not the partnership's credit had been damaged as a proximate result of the dishonors. This question should have been submitted to the jury.

■ Damages recoverable for injuries to credit as a result of a wrongful dishonor are more than mere nominal damages and are referred to as "* * * compensatory, general, substantial, moderate, or temperate, damages as would be fair and reasonable compensation for the injury which he [the depositor] must have

sustained, but not harsh or inordinate damages. * * *" 5A Michie, Banks and Banking, § 243 at 576.

What are reasonable and temperate damages varies according to the circumstances of each case and the general extent to which it may be presumed the credit of the depositor would be injured. Valley National Bank v. Witter, 58 Ariz. 491, 121 P.2d 414. The amount of such damages is to be determined by the sound discretion and dispassionate judgment of the jury. Meinhart v. Farmers' State Bank, 124 Kan. 333, 259 P. 698, 701.

■ The next item of damages claimed on behalf of the partnership, which was taken from the jury, was the claim for loss of income in the amount of $1,800 allegedly sustained by the partnership as a result of the illness and disability of Mr. Loucks by reason of his ulcer. We are of the opinion that the trial court properly dismissed this claim for the announced reason that no substantial evidence was offered to support the claim, and for the further reason that the partnership had no legally-enforceable right to recover for personal injuries inflicted upon a partner.

■ Even if we were to assume that a tortious act had been committed by defendants which proximately resulted in the ulcer and the consequent personal injuries and disabilities of Mr. Loucks, the right to recover for such would be in him. An

action for damages resulting from a tort can only be sustained by the person directly injured thereby, and not by one claiming to have suffered collateral or resulting injuries. Ware v. Brown, 29 Fed.Cas. 220 (No. 17,170) (S.D.Ohio 1869); Commercial Credit Company v. Standard Baking Co., 45 Ohio App. 403, 187 N.E. 251; General Home Improvement Co. v. American Ladder Co., 26 N.J.Misc. 24, 56 A.2d 116.

As was stated by Mr. Justice Holmes in Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290:

> " * * * no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. * * * The law does not spread its protection so far."

▮▮▮ The last question of damages concerns the claim for punitive damages. The trial court dismissed this claim for the reason that he was convinced there was no evidence of willful or wanton conduct on the part of defendants. Punitive or exemplary damages may be awarded only when the conduct of the wrongdoer may be said to be maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard of the plaintiffs' rights. Stewart v. Potter, 44 N.M. 460, 104 P.2d 736; Gray v. Esslinger, 46 N.M. 421, 130 P.2d 24; Jones v. Citizens Bank of Clovis, supra; Whitehead v. Allen, 63 N.M. 63, 313 P.2d 335.

▮▮▮ Malice as a basis for punitive damages means the intentional doing of a wrongful act without just cause or excuse. This means that the defendant not only intended to do the act which is ascertained to be wrongful, but that he knew it was wrong when he did it. Jones v. Citizens Bank of Clovis, supra; Hussey v. Ellerman, 215 S.W.2d 38 (Mo.App.1948).

▮▮▮ Although, as expressed above, we are of the opinion that there was a jury question as to whether defendants acted under a mistake of fact in dishonoring the checks, we do not feel that the unpleasant or intemperate remark or two claimed to have been made by Mr. Kopp, and his conduct, described by Mr. Martinez as having "run us out of the bank more or less," are sufficient upon which an award of punitive damages could properly have been made. Thus, the trial court was correct in taking this claim from the jury.

▮▮▮ The final matter to be disposed of on this appeal is the claim of error on the part of the court in disallowing certain items of costs. No authority is cited in support of this claim. Generally speaking, the matter of assessing costs lies within the discretion of the trial court. Sections 21–1–1(54) (d), 20–1–4(B) and 25–1–8, N.

**748**

M.S.A.1953; United States v. Bowden, 182 F.2d 251 (10th Cir. 1950). Nothing has been called to our attention to indicate that the trial court abused his discretion in disallowing the particular items of costs claimed.

It follows from what has been said that this cause must be reversed and remanded for a new trial solely upon the questions of whether or not the partnership credit was damaged as a proximate result of the dishonors, and, if so, the amount of such damages.

It is so ordered.

CARMODY, C. J., and NOBLE, J., concur.