203 P.2d 370

### GOLDENBERG v. VILLAGE OF CAPITAN.

No. 5094.

Supreme Court of New Mexico.

Sept. 25, 1948.

Rehearing Denied March 8, 1949.

Brenton & Hall, of Carrizozo, for appellant.

Irwin S. Moise and Lewis R. Sutin, both of Albuquerque, for appellee.

COMPTON, Justice.

This is a suit for damages for breach of contract.

Appellee, Charles N. Goldenberg, alleges in his complaint that on October 9, 1941, he was employed by appellant as its agent to negotiate the purchasing and financing of a power and light plant; that in connection therewith he was also employed as a consulting engineer, with offices in Santa Fe, New Mexico, for a period of three years from and after the purchase of the plant at an annual compensation of fifteen hundred dollars. The contract was in writing, the pertinent provisions of which, read:

"It is further understood and agreed that party of the first part does hereby further employ and hire party of the second part as its consulting engineer for the period of three (3) years from and after the date said purchase is completed, such consulting services to be rendered to the village *from time to time as necessity therefor should arise* in connection with the operation and maintenance of said plant within the village boundaries; * * * in consideration of the rendition of such services as consulting engineer, it is understood and agreed that compensation shall be paid to party of the second part at the rate of Fifteen Hundred ($1,500.00) dollars per year for each year such services are rendered or provided for under said contract." (Emphasis ours)

Appellant admits the execution of the contract but denies liability thereunder, asserting as a first defense, that appellee breached the contract; as a second defense, that appellee entered the military service and was stationed at Mobile, Alabama, hence, did not and could not comply with its terms; as a third defense, that the act of the village trustees in employing appellant was ultra vires; and, as a fourth defense that the contract was induced by fraud; in that, appellee, without presently intending so to do, represented that he would make personal visits to Capitan, at least twice monthly for the purpose of inspecting the plant, its distributing system, its operation, and consult with and personally advise with reference to the operation of the plant.

Previous to trial, upon motion of appellee, the first and third defenses were dismissed. The case was tried to a jury and after the parties had offered their evidence the trial court, upon motion of appellee, dismissed the fourth defense and directed a verdict for appellee, all of which was assigned as error. Appellant, to test the validity of the judgment, tendered requested findings of fact and conclusions of law, the denial of which as unnecessary and improper in such case, is also assigned as error and made the principal basis of this appeal.

█ Upon appeal, as before the trial court, it is the duty of this court to determine the question as one of law.

█ The motion concedes the testimony introduced on behalf of appellant, and every inference as may reasonably be drawn therefrom, to be true, and such evidence is to be viewed in the aspect most favorable to it. It must also be conceded that if the material evidence is undisputed and only one inference can reasonably be drawn from it, and that in favor of movant, it was the duty of the trial court, upon motion, to treat the issue one of law and direct the verdict.

At Vol. 1, page 121, Cooley on Torts, 4th Ed., the author announces the rule in the following language:

"But where the facts are undisputed and the inferences to be drawn from them are plain and not open to doubt by reasonable men, it is the duty of the court to determine the question as a matter of law."

From the undisputed evidence it appears that appellee discharged the obligations required of him in negotiating the purchasing and financing of the plant. That on November 1, 1941, he entered upon the duties as a consulting engineer, rendering consultant services from time to time as necessary during the months of November and December, 1941. That he was a naval reserve officer; and that January 2, 1942, he was placed on active duty with the Navy and assigned as outside superintendent and assistant supervisor of ship-building, and thereafter permanently stationed at Mobile, Alabama. He immediately informed appellant by letter of his assignment to active duty, and also advised appellant that he could and would fully comply with the terms of the contract.

In the performance of his duties, appellee devised and installed, for use of the parties, a comprehensive set of books, consisting of daily reports, monthly reports, etc., from which it could be determined whether the plant was operating properly and economically and whether his presence and services were needed at the plant. These reports were furnished regularly by appellant while appellee remained in the state, but when he became stationed at Mobile, appellant, disregarding appellee's repeated requests that all such reports be sent to him there, refused to do so, and under the assumption that appellee, by being placed on active duty with the Navy, had breached the contract, advised appellee under date of July 30, 1942 that the contract was terminated. It also appears that ninety percent of the duties of consultants can be performed away from the project and that if appellee's presence were required in Capitan, having access to transportation by plane to and from Capitan, his services were immediately available, not merely twice monthly but from time to time as needed.

"Consulting," according to Webster's Unabridged Dictionary, is defined as: "Designating one called in conference regarding some case or project; as, a consulting engineer." For other definitions see "Words and Phrases," Second Series.

Appellant strongly contends that where the court directs a verdict, upon motion, the trial court should make findings of fact and conclusions of law. The principle is well established that where both parties to an action request the court to direct a verdict in their behalf, and make no request that the jury be allowed to determine questions of fact, findings and conclusions must be made unless waived. Romero v. Herrera, 30 N.M. 139, 228 P. 604. See Michigan Cent. R. Co. v. Spindler, 211 Ind.

94, 5 N.E.2d 632, 108 A.L.R. 1307, 1315, where the authorities are assembled. But where only one of the parties asks for a directed verdict, and it is granted, findings of fact and conclusions of law are unnecessary. Farm Credit Corporation v. Rigby Nat. Bank, 49 Idaho 444, 290 P. 211; Langdon v. Taylor, 2 Cir., 180 F. 385; City Nat. Bank v. Phillips Petroleum Co., Tex.Civ.App., 47 S.W.2d 357; and Fidelity Trust Company v. Palmer, 22 Wash. 473, 61 P. 158, 79 Am.St.Rep. 953; De Kalb County v. Tennessee Electric Power Co., 17 Tenn.App., 343, 67 S.W.2d 555; and Driscoll v. Morris, Tex.Civ.App., 275 S.W. 196.

It should here be noted, however, that in those cases tried to the court without a jury it is the duty of the trial court to make findings of fact and conclusions of law. N.M.Stat., Sec. 19-101, rule 52(B), 1941 Comp; Pankey v. Hot Springs Nat. Bank, 46 N.M. 10, 119 P.2d 636; Sandoval County Board of Education v. Young, 43 N.M. 397, 94 P.2d 508.

It is next contended that the provisions of the contract are indefinite, vague and uncertain, consequently, parol evidence is admissible to explain the term "from time to time as necessity therefor should arise", the refusal of which by the trial court, is assigned as error. With regard to the duties of appellee, one look at the contract convinces us that the tendered evidence is inadmissible. Appellee, under the terms of the contract, was required to render consulting services not merely twice monthly but from time to time as necessary. The tendered evidence, being at variance with the clear and unambiguous terms of the written contract, is inadmissible. Bell v. Lammon, 51 N.M. 113, 179 P.2d 757. See also Bank of America v. Pendergrass, 4 Cal.2d 258, 48 P.2d 659; Locomobile of America Co. v. Belabco, 32 Cal.App. 329, 162 P. 920.

Appellant also contends that the contract was induced by fraud. The evidence in support of this contention has been fully considered and it fails to raise an issue.

Appellant finally contends that when appellee was placed on active duty in the naval service, there was such a changed condition as to destroy the basis of the contract. Consequently, the decisive question for our determination is whether the contractual obligations terminated, in law, upon appellee's entry upon active naval service.

Article H-1707(3), Bureau of Naval Personnel Manual, relating to naval reserve personnel placed on active duty in time of war, reads:

"When so placed on active duty, it is expected that officers and men will devote their whole time to naval duties and shall

not engage in private employment, except in such cases as may be specifically authorized by the *Bureau of Naval Personnel*". (Emphasis ours)

In view of the foregoing naval regulation applicable to Reserve Naval Officers having the force of a statute (Central of Georgia R. Co. v. Gwynes, 153 Ga. 606, 113 S.E. 183; United States ex rel. Brown v. Lederer, 7 Cir., 140 F.2d 136) which we may notice judicially, United States v. Gumm Bros., 9 N.M. 611, 58 P. 398, and Wood v. Bartolino, 48 N.M. 175, 146 P.2d 883; even though it be a regulation of the Armed Services, Board of Commissioners of Vermillion County v. Hammond, 83 Ind. 453; Hibbard v. Hibbard, Ind.App., 73 N.E.2d 181; United States ex rel. Altieri v. Flint, 54 F.Supp. 889; affirmed, 2 Cir., 142 F.2d 62; Richardson v. Kansas Soldiers' Compensation Board, 150 Kan. 343, 92 P.2d 114; Cf. Janco v. John Hancock Mutual Life Ins. Co., 160 Pa.Super. 230, 50 A.2d 695, but which went unnoticed in the trial court, what disposition should be made of this appeal? The plaintiff has never been confronted with it by way of defense. At least, he is entitled to his day in court on the effect it may properly have on his claim. It would be unfair not to accord him that right. It would be equally unfair to permit the present judgment against the Village of Capitan to stand if, under the facts or law, the regulation mentioned forecloses right of performance on plaintiff's part.

Cf. Havens v. Rochester Ropes, Inc., 267 App.Div. 394, 46 N.Y.S.2d 534; 293 N.Y. 760, 57 N.E.2d 839; 151 A.L.R. 1449. We are in no position to review any ruling of the trial court in reference to the regulation for it has made none, nor passed on evidence received or tendered touching the same.

In such circumstances, mindful of our primary function as a court of review, Thurman v. Grimes, 35 N.M. 498, 1 P.2d 972, it seems only just and proper to remand the cause for a new trial at which the district court may first exercise its original jurisdiction in relation to the whole matter (Cf. Nagle v. United States, 2 Cir., 145 F. 302) leaving it open to either party to bring the judgment rendered before us for review if aggrieved thereby. Upon such review all questions determined and passed upon by the trial court where error is reserved below, may be presented and decided here.

The judgment is reversed with directions to the trial court to reinstate the cause upon its docket and grant a new trial. Appellant will recover its cost, and it is so ordered.

BRICE, C. J., and LUJAN, SADLER, and McGHEE, JJ., concur.

On Motion for Rehearing.

PER CURIAM.

This cause coming on to be heard upon motion for rehearing, and the Court having

heard and considered said motion and being sufficiently advised in the premises, it is ordered, Mr. Justice SADLER dissenting in a written opinion holding that the motion should be granted, be and the same is hereby denied.

SADLER, Justice (dissenting).

My views do not accord with those of the majority. In my opinion, rehearing should be granted. In a recent decision, rendered December 15, 1948, by the Tax Court of the United States, in a case entitled Jack Dempsey's Punch Bowl, Inc., Petitioner, v. Commissioner of Internal Revenue, Respondent, 11 T.C. 1030, a deduction of $12,-000 of the $36,724.72 paid by petitioner to former Heavyweight Boxing Champion, Jack Dempsey, for the use of his name and for personal appearances, was contested by the Commissioner of Internal Revenue as excessive. Hence, it was claimed to be not deductible for tax purposes. Apprehensive lest he might not prevail on the merits of his claim, the Commissioner pointed to the regulation relied upon in our opinion heretofore filed, Article H–1707(3) of 1942 edition of the Navy Department of Bureau of Personnel Manual, expressing the Department's "expectation" that while on active duty officers and men would devote their whole time to naval duties and not engage in private employment, "except in such cases as may be specifically authorized by the Bureau of Naval Personnel."

The Court treated the contention as one of little merit. It said:

"Respondent points out that Dempsey did not receive permission from the proper authorities in the Navy Department to appear in petitioner's restaurant after receiving his commission from the United States Coast Guard. From this fact he states 'a serious question of public policy is presented as to whether the payments should be recognized for tax purposes even if otherwise allowable.' He cited no authority for this statement and we have been unable to find any valid reason to support respondent's suggestion. The facts show that Dempsey's appearances at petitioner's restaurant had the approval of his immediate superior officers; indeed, they accompanied him there on several occasions. Respondent, however, says this is not enough, that he should have had the approval of the chief of the Bureau of Naval Personnel. We believe the effect of respondent's argument is an attempt to have this tribunal enforce naval regulations, which function, of course, is not vested in this Court."

In the case at bar the appellant chose to treat the donning of his country's uniform by the appellee as automatically cancelling his contract, relieving it of all further responsibility or liability thereunder, without more ado. It is, indeed, a poor reward to its patriotic sons by the people of a grateful republic to let them know entry into its

armed services in time of peril operates ipso facto to cancel all existing contracts calling for personal services on their part, regardless of their ability to perform them. Such will be the effect if, upon retrial of this case, it shall be held the appellee cannot recover if he failed to have authority from Bureau of Naval Personnel to perform services under his contract with appellant, which it purposely refrained from tendering him, upon the assumption that entering the Navy automaticaly cancelled the contract.

Apparently, the sole reason for returning the cause for retrial is to give appellee an opportunity to show authority from the Bureau to perform under his contract. Since the occasion for requesting such authority never arose, no work being tendered him by appellant, the judgment rendered in appellee's favor should be affirmed. Indeed, it would have been altogether inconsistent with appellant's position to tender work to appellee, its contention being that entry into the armed services, automatically and without more, cancelled the contract. It so advised him by letter. It should be made to stand or fall here on the correctness of that position. Our opinion on file at one point seems to recognize this as the decisive question. It states:

"Appellant finally contends that when appellee was placed on active duty in the naval service, there was such a changed condition as to destroy the basis of the contract. Consequently, the decisive question for our determination is whether the contractual obligations terminated, in law, upon appellee's entry upon active naval service."

The question said to be decisive should have been answered in the negative and the judgment affirmed on the strength of it. I take my share of the blame for failing to appreciate earlier that appellant's act in repudiating the contract, on the assumption the question we hold to be decisive should be resolved in its favor, calls on us to affirm the judgment against it, if to be resolved otherwise.

Where as here, and as our opinion filed admits, by far the greater part of his services (90 per cent.) were as a consultant and could be rendered away from the project, and "if appellee's presence were required in Capitan, having access to transportation by plane to and from Capitan, his services were immediately available, not merely twice monthly but from time to time as needed," it certainly is a deserved tribute to the patriotic service on which one of the contracting parties was engaged, and becomes a matter of legitimate inquiry, to ascertain whether notwithstanding his presence in the armed services, he still is able to perform his contract.

I am quite unable to bring myself into agreement with any reasoning that would deny one on active military duty for his country in time of war a concession so lacking in burden on the other party. It is interesting to note that in the issue of the Federal Register appearing on November 14, 1947, a revision of Title 34 was published in which regulation quoted in our opinion was recodified as § 14.1707(c) of Part 14, and the text was changed to read as follows:

"When so placed on active duty, officers and enlisted personnel shall not engage in private employment or enterprise which will interfere in any way with their naval duties."

. It seems not unlikely, especially in view of the use of the word "expected" in the subject regulation as originally framed, that the amended regulation was adopted merely to conform to the practice prevailing under the same as it stood. Whether so or not, I cannot bring myself to agree that entry into the country's armed services ipso facto cancels one's contract to render personal services, regardless of one's ability to do so. Such was the position taken by appellant below and its stated reason for not tendering appellee work under the contract in the face of the latter's assurance of willingness and ability to perform. In my opinion, the case is one which fully warrants a rehearing. The majority holding otherwise, I dissent.