[Civ. No. 57269. Second Dist., Div. Four. Dec. 17, 1980.]

STEVEN KARL KARSH, Plaintiff and Appellant, v.
AMERICAN CITY BANK et al., Defendants and Respondents.

COUNSEL

Kraines, Monte & Morris and Pearl Morris for Plaintiff and Appellant.

Cohen, Freeman & Broker and Jeffrey W. Broker for Defendants and Respondents.

OPINION

**KINGSLEY, Acting P. J.**—Plaintiff appeals from a judgment (order of dismissal) entered after an order sustaining, without leave to amend, a demurrer to his third amended complaint (hereinafter "complaint"). We reverse.

■   Resting his complaint on section 4402 of the California Uniform Commercial Code, plaintiff, in four causes of action, seeks damages for the conduct of defendant bank and its employees for dishonoring the checks of a corporation (Trio Consolidated Corporation) of which he was the president and sole owner. The demurrer was sustained on the theory that only the corporation, which was the nominal depositor, could maintain an action under that statute. We disagree.

Section 4402 of the California Uniform Commercial Code provides as follows: "A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved." The parties agree that, although two cases from other jurisdictions, interpreting the same section of the Uniform Commercial Code, have held in accordance with the ruling below,[1] California, in *Kendall Yacht Corporation* v. *United California Bank* (1975) 50 Cal.App.3d 949 [123 Cal.Rptr. 848], has recognized that, under some circumstances, an individual, not the nominal depositor, may recover damages under section 4402.[2] The issue before us is whether the facts alleged in the complaint before us bring plaintiff within the holding of *Kendall.* We conclude that they do.

In the case at bench, as in *Kendall,* it is alleged that the nominal depositor corporation "had not issued any stock of said corporation, was undercapitalized and was a transprent [*sic*] shell, having no viability as a separate and distinct legal entity, and plaintiff is informed and believes and based upon such information and belief all to the knowledge of defendants, and each of them. Plaintiff, alone, controlled the corporation's financial affairs and personally vouched for its fiscal reponsibility both to defendant BANK, through its employees, including, but not limited to, defendant SEEMAN and to the public at large." and that "At all times mentioned herein, defendant BANK dealt directly with plaintiff, looked personally to plaintiff and required plaintiff to personally guarantee and satisfy all obligations of TRIO to defendant BANK as they would arise. Plaintiff did, in fact, personally guarantee and did in fact satisfy said obligations. Plaintiff personally, and not in the capacity

---

[1] *Farmers Bank* v. *Sinwellan Corp.* (Del. Sup. 1976) 367 A.2d 180; *Loucks* v. *Alburquerque National Bank* (1966) 76 N.M. 735 [418 P.2d 191].

[2] In *Kendall,* rejecting the holding in *Loucks,* the court said (at p. 956): ". . .we would elevate form over substance if we were to hold that the wrong defined by section 4402 was done only to the Corporation and that the Kendalls as individuals could not recover therefor."

of a corporate officer, satisfied corporate debts to defendant BANK through the use of plaintiff's own personal monies as defendant BANK required and plaintiff guaranteed to do."

In attempting to distinguish *Kendall*, defendants point to the fact that, in that case, there was a written guarantee by the Kendalls of the corporate obligations to the bank. However, while that fact was relied on in *Kendall* to support the conclusion that in dishonoring the corporate checks, the bank was aware that its conduct would reflect on, and injure the reputation of, the Kendalls, the case does not rest solely on that element. As the *Kendall* court pointed out (at pp. 958-959): "The evidence discloses only a vague and ill-defined commitment by the Bank to honor overdrafts. Mr. Kendall testified that, when he found himself lacking sufficient current income to meet production expenses, Lamperts told him the Bank would 'stick with us' until 'we were out of the woods.' What were the limits of this commitment? How long was the Bank required to honor the Corporation's checks? How many of the checks was it required to pay?..." While *Kendall* held that, under those circumstances, punitive damages were not recoverable, it nevertheless sustained a judgment for actual damages.

We deal here with a general demurrer. It may be, on remand, that a proper attack limited to the punitive damage claim in plaintiff's complaint may prevail, but if plaintiff can prove the allegations above set forth, he is entitled, under *Kendall*, to recover such actual damages as his proof at trial will sustain.

The judgment (order of dismissal) is reversed.

McClosky, J., and Munoz, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.