459 N.W.2d 371 (1990)
236 Neb. 139
Robert PARRETT, Appellant,
v.
PLATTE VALLEY STATE BANK & TRUST CO., Appellee.
No. 88-654.
Supreme Court of Nebraska.
August 17, 1990.
Michael G. Helms and Mark R. Scherer, of Schmid, Mooney & Frederick, P.C., Omaha, for appellant.
William T. Wright, of Jacobsen, Orr, Nelson, Wright & Harder, P.C., Kearney, for appellee.
HASTINGS, C.J., and BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT and FAHRNBRUCH, JJ.
PER CURIAM.
Robert Parrett appeals from the judgment of the district court for Buffalo County which sustained the demurrer of Platte Valley State Bank & Trust Co. and dismissed Parrett's suit.
"When ruling on a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of a fact not *372 alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial."
Security Inv. Co. v. State, 231 Neb. 536, 538, 437 N.W.2d 439, 442 (1989); Schuyler State Bank v. Cech, 228 Neb. 588, 423 N.W.2d 464 (1988).
Parrett was the principal shareholder, president, and chief operating officer of P & P Machinery, Inc., a Nebraska corporation engaged in the business of buying and selling farm machinery. P & P Machinery had its principal place of business in Kearney, Nebraska, where the bank was located.
For several years before March 1984, the bank provided operating loans and financing to P & P Machinery, which had its checking account at the bank. Parrett personally participated in the business relationship between P & P Machinery and the bank, including Parrett's personal guaranty to the bank for all obligations owed by P & P Machinery to the bank. Also, Parrett was authorized to sign checks drawn on P & P Machinery's account at the bank.
On March 1, 1984, Parrett signed and delivered a check from P & P Machinery to Nelson Farm Equipment at Madison, South Dakota, for the purchase of farm machinery and equipment. Later, on March 7, the bank dishonored the check to Nelson Farm Equipment and returned the check without payment, although, when the check was presented for payment, P & P Machinery had sufficient funds in its account with the bank to pay the check. As a result of the dishonored check, Parrett was charged with felony theft in South Dakota and was extradited from Nebraska to stand trial in Lake County, South Dakota. Parrett went to trial on the charge in South Dakota. However, at trial the court dismissed the charge against Parrett.
Parrett sued the bank for damages proximately caused by the bank's dishonor of the P & P Machinery check signed by Parrett and alleged three causes of action: (1) the bank's negligence in failing to pay the check to Nelson Farm Equipment; (2) the bank's wrongful dishonor of the check, which, pursuant to Neb.U.C.C. § 4-402 (Reissue 1980), resulted in the bank's liability to Parrett for damages; and (3) the bank's breach of its duty of good faith performance under Neb.U.C.C. § 1-203 (Reissue 1980).
The bank filed a demurrer to Parrett's amended petition, alleging that Parrett had not pled facts sufficient to constitute a cause of action against the bank. After the hearing on the bank's demurrer, the court stated:
It is the conclusion of this Court that the Plaintiff has no standing to maintain the action in his own name. The Plaintiff was not the account holder nor the "customer" in the statutory meaning. If the negligence of the Defendant Bank caused damage to its customer, the corporation, or if the wrongful dishonor resulted in damages to the customer, the corporation is the sole and only entity capable of bringing the action. The officer or shareholder of the corporation is not authorized to recover in a derivative sense and therefore the Demurrer must be sustained.
The district court then sustained the demurrer and dismissed Parrett's petition.
In Parrett's appeal, the sole issue is whether Parrett, as president and principal shareholder of P & P Machinery, is the bank's "customer" under § 4-402, which provides in part: "A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item." "Customer" is defined as "any person having an account with a bank or for whom a bank has agreed to collect items...." Neb.U.C.C. § 4-104(1)(e) (Reissue 1980).
In Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191 (1966), Loucks and Martinez, as partners, had a partnership checking account at Albuquerque National. The bank dishonored the partnership's check after it had improperly charged the partnership account with a payment on a debt owed by Martinez. Loucks and Martinez individually sued the bank for wrongful dishonor of the partnership check. Under New Mexico law, a partnership was a legal entity distinct *373 from the partners and was entitled to sue in the partnership name. New Mexico, which had adopted the Uniform Commercial Code, had statutes containing the same language as Neb.U.C.C. §§ 4-402 and 4-104(1)(e). In determining that Loucks and Martinez, as individuals, had no cause of action against the bank for the alleged wrongful dishonor, the court stated:
It would seem that logically the "customer" in this case to whom the bank was required to respond in damages for any wrongful dishonor was the partnership....
....
The question of whether a wrongful dishonor is to be considered as a breach of contract or as a breach of a tort duty was apparently avoided by the drafters of the Uniform Commercial Code by using the words "wrongful dishonor." ...
We have not overlooked the fact that tortious conduct may be tortious as to two or more persons, and that these persons may be the partnership and one or more of the individual partners. [Citation omitted.]
The relationship, in connection with which the wrongful conduct of the bank arose, was the relationship between the bank and the partnership. The partnership was the customer, and any damages arising from the dishonor belonged to the partnership and not to the partners individually.
....
... No duty was owed to [Loucks] personally by reason of the debtor-creditor relationship between the bank and the partnership.
76 N.M. at 742, 744, 418 P.2d at 196-97.
A cause of action for a bank's wrongful dishonor of checks was presented in Kendall Yacht Corp. v. United California Bank, 50 Cal.App.3d 949, 123 Cal.Rptr. 848 (1975). Lawrence and Linda Kendall were officers and prospective principal shareholders of Kendall Yacht Corporation, which maintained its checking accounts at United California Bank. The corporation never issued stock. Both Kendalls executed their personal guaranties for the bank's loans to the corporation. Under the financing arrangements approved by one Ron Lamperts, a bank loan officer, the bank honored the corporation's checks, although there were sometimes insufficient funds in the corporation's account to pay the checks. The bank dishonored checks from the corporation. After the corporation collapsed, criminal charges were brought against Linda Kendall, but the charges were dismissed before trial. Kendalls sued the bank for its wrongful dishonor of the corporation's checks and were awarded a judgment for damages. The bank appealed. In affirming the judgment for the Kendalls, the court stated:
The Bank contends first that under Commercial Code section 4402 the wrongful dishonor of a check of a corporation does not give a cause of action for damages to individual officers and shareholders of the corporation. California Uniform Commercial Code section 4402, which represents section 4-402 of the Uniform Commercial Code, reads as follows: "A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved." The Bank relies on Loucks v. Albuquerque National Bank 76 N.M. 735 [418 P.2d 191], where it was held that under Uniform Commercial Code section 4-402 individuals doing business as partners could not recover for damages to their personal credit, good reputation, and business standing which resulted from the wrongful dishonor of checks written on the partnership account....
It is not clear whether the New Mexico court meant to say that in every case where an account stands in the name of a partnership or a corporation, only the business entity may recover under section 4-402, regardless of the circumstances. Such a narrow and technical reading of the statute and the term "customer" does not seem warranted. The purpose of the statuteto hold banks accountable for damages proximately caused by wrongful dishonorsis more *374 readily served by allowing a flexible and reasonable interpretation of the word "customer."
We would certainly not hold as a general proposition that the shareholders or officers of a corporation could recover under section 4402 for the wrongful dishonor of a corporation check. Here, however, it is difficult to avoid the conclusion that Mr. and Mrs. Kendall were as much "customers" of the Bank within the contemplation of the statute as was the Corporation. Lamperts and the Bank looked directly to the Kendalls to satisfy the obligations of the Corporation. They were required to execute a personal guarantee of the initial $14,000 loan, and later they were required to increase that guarantee to $20,000 to cover the additional credit the Bank was extending to the Corporation in the form of honoring its overdrafts. The reason the Bank required the guarantees is obvious. The Corporation had never issued shares and was undercapitalized; it was, in effect, nothing but a transparent shell, having no viability as a separate and distinct legal entity. The Kendalls alone were controlling its financial affairs and were personally vouching for its fiscal responsibility. Not only the Bank, but also the suppliers and employees of the Corporation knew that this was the situation.... Thus it was entirely foreseeable that the dishonoring of the Corporation's checks would reflect directly on the personal credit and reputation of the Kendalls and that they would suffer the adverse personal consequences which resulted when the Bank [dishonored the checks]. Under these circumstances we would elevate form over substance if we were to hold that the wrong defined by section 4402 was done only to the Corporation and that the Kendalls as individuals could not recover.
(Emphasis in original.) 50 Cal.App.3d at 955-56, 123 Cal.Rptr. at 852-53.
In Murdaugh Volkswagen v. First Nat. Bank of S.C., 801 F.2d 719 (4th Cir.1986), the court of appeals affirmed a judgment for Eunice Murdaugh, who had sued the bank for wrongful dishonor of corporate checks drawn on the bank. Murdaugh, as the president and sole shareholder of Murdaugh Volkswagen, Inc., contacted the bank for a Small Business Administration loan to the corporation. In connection with the loan, the bank obtained a mortgage on Murdaugh's home. In the course of its financial transactions with Murdaugh, the bank used moneys from the corporate reserve accounts, without authorization or accounting, to pay loan payments of the corporation and the debts of Murdaugh's husband. An assistant vice president of the bank was assigned to monitor the corporate checking account of Murdaugh Volkswagen, Inc., and to decide daily which corporate checks would be paid and which deposits were credited to the corporation's account. Only checks approved by the bank's officer were honored. Although the balance in the corporate account exceeded the amount of certain checks drawn by Murdaugh Volkswagen, Inc., the bank dishonored the corporation's checks, which was the first time in 20 years of business with the bank that any check had been returned to Murdaugh Volkswagen, Inc. Eunice Murdaugh sued the bank and claimed that the bank's wrongful dishonor of the checks led to ruination of her automobile dealership, which eventually filed for bankruptcy. Also, the mortgage on the Murdaugh home was foreclosed. In Murdaugh Volkswagen, the court concluded:
According to the Bank, Mrs. Murdaugh has no standing to assert a claim for wrongful dishonor or defamation because there was no proof that she had an account with the Bank and she was not a customer of the Bank within the meaning of S.C.Code Ann. §§ 36-4-402 and 36-4-104. We conclude that the Bank's construction of the South Carolina statutes is unjustifiably narrow. In this case, the evidence demonstrates the close intertwinement between Mrs. Murdaugh and her company, of which she was president and sole stockholder. Moreover, the Bank clearly treated Mrs. Murdaugh and the corporate depositor as one entity.... More importantly, the Bank consistently and repeatedly looked to Mrs. Murdaugh *375 to assume the corporation's obligations by requiring her to mortgage her own home and personally borrow funds for the company's benefit. At least under the facts presented by this case, we hold that Mrs. Murdaugh was a customer of the Bank under South Carolina law....
801 F.2d at 725.
A result similar to that in Kendall Yacht Corp. v. United California Bank, 50 Cal.App.3d 949, 123 Cal.Rptr. 848 (1975), and Murdaugh Volkswagen v. First Nat. Bank of S.C., supra, is found in C-K Enterprises v. Depositors Trust Co., 438 A.2d 262 (Me.1981), in which Christine Kyllonen owned two businesses which were transferred to C-K Enterprises, Inc. Kyllonen opened a checking account at Depositors Trust for C-K Enterprises and was the person empowered to draw checks on the corporate account. The court affirmed a verdict for Kyllonen in her action against the bank for wrongful dishonor of checks drawn on the account of C-K Enterprises, stating:
[Depositors Trust] argues that plaintiff Kyllonen had no standing to sue because she had conveyed all of her interests in the two businesses to C-K Enterprises, Inc. four years before the commencement of this action. We disagree. Although the names on the accounts did not accurately reflect the business status of plaintiff, she was the depositor and signer of the checks as well as the person regarded by the bank as its customer. Damages caused by any mishandling of the accounts by the bank would necessarily have redounded to Kyllonen. As she alleged and subsequently proved, her individual business reputation and peace of mind were damaged by defendant's actions. Without doubt plaintiff Kyllonen's "definite and personal legal rights" are sufficiently at stake in this action to establish her standing.
438 A.2d at 264.
A corporate officer's cause of action against a bank for wrongful dishonor of checks signed by the officer and drawn on the corporation's account was recognized in Karsh v. American City Bank, 113 Cal. App.3d 419, 169 Cal.Rptr. 851 (1980). Karsh was the president and sole owner of the corporation, Trio Consolidated Corporation, which, apparently, never issued stock. When the bank dishonored Trio's checks, Karsh sued for wrongful dishonor. The bank's demurrer was sustained on the theory that only the corporation, which was the nominal depositor, could maintain an action against the bank for wrongful dishonor. However, the court in Karsh reversed the dismissal by the trial court and stated:
In the case at bench, as in Kendall, it is alleged that the nominal depositor corporation "had not issued any stock of said corporation, was undercapitalized and was a transprent [sic] shell, having no viability as a separate and distinct legal entity, and plaintiff is informed and believes and based upon such information and belief all to the knowledge of defendants, and each of them. Plaintiff, alone, controlled the corporation's financial affairs and personally vouched for its fiscal responsibility both to defendant BANK through its employees, including but not limited to, defendant SEEMAN and to the public at large" and that "At all times mentioned herein, defendant BANK dealt directly with plaintiff, looked personally to plaintiff and required plaintiff to personally guarantee and satisfy all obligations of TRIO to defendant BANK as they would arise.... Plaintiff personally, and not in the capacity of a corporate officer, satisfied corporate debts to defendant BANK through the use of plaintiff's own personal monies as defendant BANK required and plaintiff guaranteed to do."
113 Cal.App.3d at 421-22, 169 Cal.Rptr. at 852. See, also, First Nat'l Bank of Springdale v. Hobbs, 248 Ark. 76, 450 S.W.2d 298 (1970) (corporation's president was a customer of the bank, which was liable to the corporation's president when the bank wrongfully honored unauthorized checks written on the corporation's account).
However, several courts have refused to recognize a corporate officer's cause of action for a bank's wrongful dishonor of a check signed by the officer and drawn on *376 the corporation's account. For example, in Farmers Bank v. Sinwellan Corporation, 367 A.2d 180 (Del.1976), Sinwellan Corporation had a checking account at Farmers Bank. P.A. Sinclair, president of Sinwellan, sued the bank for its wrongful dishonor of Sinwellan checks. The Supreme Court of Delaware held that Sinclair was not a "customer" of Farmers Bank and, therefore, did not have a cause of action, and stated:
6 Del.C. § 4-402 provides that a "bank is liable to its customer for damages proximately caused by the wrongful dishonor of" a check. And in § 4-104(1)(e) a "customer" is defined as "... any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank."
Relying on First National Bank of Springdale v. Hobbs, 248 Ark. 76, 450 S.W.2d 298 (1970), the Superior Court concluded that Sinclair was "undoubtedly considered" by Farmers to be the "customer" because he opened the account, determined who would draw on it and had a personal account with the Bank. There is a double difficulty with the Court's conclusion: First, the statutory definition includes only a person having an account with a bank; the language is plain and does not require construction Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191 (1966); here, the account in question was that of Sinwellanit was the "person," not Sinclair. The second problem with the Court's ruling is that we are unable to find any record support for its finding that Farmers regarded Sinclair as its customer.
367 A.2d at 183.
In Kesner v. Liberty Bank & Trust Co., 7 Mass.App. 934, 390 N.E.2d 259 (1979), the court considered a corporate treasurer's cause of action to recover damages for the depository bank's wrongful dishonor of corporate checks. In affirming a summary judgment for the bank, the Kesner court stated:
The plaintiff, who was the treasurer of Hereford Realty, Inc., could not recover damages under G.L. c. 106, § 4-402, for the bank's wrongful dishonor of the corporation's checks because the corporation, and not the plaintiff, was the "customer" of the bank within the meaning of that section. See Farmers Bank v. Sinwellan Corp., 367 A.2d 180 (Del. 1976); Loucks v. Albuquerque Natl. Bank, 76 N.M. 735, 418 P.2d 191 (1966). General Laws c. 106, § 4-104(e), inserted by St.1957, c. 765, § 1, defines "customer", in relevant part, as "any person having an account with a bank." There is no ambiguity here as to who had the account with the bank, as there was in First Natl. Bank of Springdale v. Hobbs, 248 Ark. 76, 450 S.W.2d 298 (1970); nor is it suggested that the corporation "was, in effect, nothing but a transparent shell, having no viability as a separate and distinct legal entity," as was the case in Kendall Yacht Corp. v. United Cal. Bank, 50 Cal.App.3d 949, 956, 123 Cal.Rptr. 848, 853 (1975).
390 N.E.2d at 259.
In construing Fla.Stat.Ann. § 674.402 (West 1966), which is identical to Neb.U. C.C. § 4-402, the court in Koger v. East First Nat. Bank, 443 So.2d 141 (Fla.App. 1983), affirmed dismissal of Koger's complaint based on a bank's wrongful dishonor of the checks of a corporation in which Koger was a shareholder. For the checking account, the named customer was Kenny and Koger Construction, Inc. (KKCI), in which Koger was a principal stockholder. When the bank refused to honor KKCI's checks, Koger sued and contended that he sustained damage when KKCI defaulted on numerous construction projects. In Koger, the court found that Koger was not entitled to maintain the action against the bank and stated:
We choose to adhere to the more literal interpretation of section 674.402, which follows the interpretation given to section 4-402 in Kesner v. Liberty Bank & Trust Company, 7 Mass.App. 934, 390 N.E.2d 259 (1979); Farmers Bank v. Sinwellan Corporation, 367 A.2d 180 (Del.1976), and Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191 (1966). These cases hold that a *377 bank's liability extends only to the corporation or partnership which is its "customer," rather than to the individual partner or member of that corporation or partnership.
In the instant case, appellant was not the proper party to bring an action against appellee. The named customer of the bank was the corporation KKCI. Thus, according to the above authorities, KKCI would have been the only party entitled to institute a cause of action against appellee under the provisions of section 674.402.
Appellant cites to Karsh v. American City Bank, 113 Cal.App.3d 419, 169 Cal. Rptr. 851 (1980), and Kendall Yacht Corporation v. United California Bank, 50 Cal.App.3d 949, 123 Cal.Rptr. 848 (1975), for the proposition that individual members of a business entity, that is the customer of a bank, are entitled to obtain relief under section 4-402.
Although the language of section 4-402 is identical to that of section 674.402, we choose to disagree with the liberal interpretation given it by the California courts. Both the Karsh and Kendall cases refer to corporations that were "undercapitalized" or mere "transparent shells." Appellant did not allege that KKCI was in the same position as the corporations in Karsh and Kendall. Accordingly, we affirm the decision of the trial court.
443 So.2d at 142-43.
In Schoenfelder v. Arizona Bank, 161 Ariz. 601, 780 P.2d 434 (1989), the question was whether Schoenfelder was the bank's "customer" and, therefore, entitled to have his account recredited as the result of a forged signature on a check drawn on the account of the corporation for which Schoenfelder was an officer. In deciding that Schoenfelder had no standing to bring the action, the court stated:
[W]e believe the better reasoned cases support a conclusion that, under the facts of this case, Schoenfelder is not a customer of the Bank, and thus has no standing to seek recrediting of the account.
Similar facts were before the court in Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191 (1966). In that case, the court held that the individual partners who had opened a partnership account at defendant bank were not the bank's customers, and therefore could not bring an action against the bank for wrongful dishonor of partnership checks. Rather, the partnership was the customer to whom the bank was liable for the wrongful dishonor....
Schoenfelder urges us to follow the reasoning of cases which appear to interpret the definition of "customer" more broadly than Loucks....
In our opinion, Hobbs [First Nat'l Bank of Springdale v. Hobbs, 248 Ark. 76, 450 S.W.2d 298 (1970)] and the other cases on which Schoenfelder relies to establish his standing as a "customer" are inapposite. In Hobbs, the bank's president was personally aware that Hobbs was the person mainly interested in setting up the account. He testified that he assumed Hobbs and Starnes owned the account. 450 S.W.2d at 301. Similarly, in Kendall Yacht Corp. v. United California Bank, 50 Cal.App.3d 949, 123 Cal.Rptr. 848 (4th Dist.1975), the evidence indicated that the Kendalls (officers and principal shareholders of a corporation which never issued stock and was undercapitalized) were as much "customers" of defendant bank as was the corporation in whose name the account was opened. In Kendall, the court found that the corporation was a "transparent shell," controlled and financed solely by the Kendalls, and that the bank knew this was the case. The bank looked directly to the Kendalls to satisfy the corporation's debts, and even required them to execute personal guarantees to cover credit extended to the corporation for corporate overdrafts. Thus, the Kendalls themselves could recover for wrongful dishonor of the corporation's checks. Id. at 956, 123 Cal.Rptr. at 853. Cf. Murdaugh Volkswagen, Inc. v. First National Bank of South Carolina, 801 F.2d 719, 725 (4th Cir.1986) (bank clearly treated president and sole *378 stockholder of corporate depositor as the bank's customer and repeatedly looked to her to assume corporation's obligations).
The record in this case does not establish that the Bank regarded Schoenfelder as its customer....
... There is no evidence that, at the time the account was actually opened or at any time thereafter, the Bank was aware that Schoenfelder's relationship with it was anything more than a mandatory signatory on a corporate account. Undoubtedly many corporate accounts are opened in bank branches on which a person, often an officer or trusted employee of the corporation, is named a mandatory signatory. A mandatory signatory on a corporate account does not thereby become a customer under A.R.S. §§ 47-4104 and 47-4401. We hold that the evidence in this case is insufficient to establish that Schoenfelder was the Bank's customer under A.R.S. § 47-4401(A). Thus, Schoenfelder has no standing to bring this action.
(Emphasis in original.) 161 Ariz. at 605-07, 780 P.2d at 438-40. See, also, Thrash v. Georgia State Bank of Rome, 189 Ga. App. 21, 375 S.E.2d 112 (1988) (corporation's president, who was one of four shareholders and who owned minority of shares, was not a "customer" of the bank in which the corporation was a depositor and, therefore, could not maintain a "wrongful dishonor" action against the bank notwithstanding that the plaintiff president guaranteed the corporation's debt to the bank).
After considering the preceding cases, we find the reasoning expressed in Kendall Yacht Corp. v. United California Bank, 50 Cal.App.3d 949, 123 Cal.Rptr. 848 (1975), to be persuasive. Directing the Kendall rationale to Parrett's case, and accepting Parrett's alleged facts to be true with reasonable inferences drawn therefrom, see Security Inv. Co. v. State, 231 Neb. 536, 437 N.W.2d 439 (1989), we find that Parrett was a "customer" of the bank within the meaning of § 4-402 and that Parrett's petition does state a cause of action for the bank's wrongful dishonor of the P & P Machinery check signed by Parrett. As reflected by Parrett's petition, the parties' business relationship, which included Parrett's personal guaranty for P & P Machinery's obligations to the bank, was such that it was foreseeable that dishonoring the corporation's check would reflect directly on Parrett. This is borne out by the fact that a criminal charge based on the dishonored check was brought against Parrett, but was dismissed during Parrett's trial. Since the consequences of the wrongful dishonor fell upon Parrett, it would elevate form over substance to say that he was not the bank's "customer" within the meaning of § 4-402. This is not to say that in every case a corporate officer has a wrongful dishonor action against the depository bank on which the corporation's check has been drawn and later dishonored. However, in view of the facts of this case alleged in Parrett's petition, Parrett has a cause of action against the bank.
The bank argues that it owed no special duty to Parrett, who has based his suit on a transaction which occurred by reason of Parrett's being the principal shareholder of P & P Machinery and an officer who signed the corporate check which was dishonored by the bank.
Recently, in Meyerson v. Coopers & Lybrand, 233 Neb. 758, 762, 448 N.W.2d 129, 133 (1989), we stated:
As a general rule a shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property. Such a cause of action is in the corporation and not the shareholders. The right of a shareholder to sue is derivative in nature and normally can be brought only in a representative capacity for the corporation. [Citations omitted.]
There is a well-recognized exception to the general rule: If the shareholder properly establishes an individual cause of action because the harm to the corporation also damaged the shareholder in his or her individual capacity, rather than as a shareholder, such individual action may be maintained. [Citations omitted.]
The courts generally are in agreement that to come within this exception, the *379 shareholder must demonstrate that there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder or that the shareholder suffered an injury separate and distinct from that suffered by other shareholders. [Citations omitted.]
If the facts alleged in Parrett's petition are true, which we must assume for the purposes of our review in this case, Parrett, as a shareholder of P & P Machinery, has established an individual cause of action because any harm to P & P Machinery also damaged Parrett in his individual capacity, rather than as a shareholder. See Meyerson v. Coopers & Lybrand, supra. The history of the business relationship between the bank and P & P Machinery, which included Parrett's personal guaranty for P & P Machinery's obligations to the bank, provides special circumstances and, therefore, a special duty owed by the bank to Parrett as the principal shareholder of P & P Machinery. Thus, according to Parrett's petition, Parrett is not only a customer of Platte Valley State Bank & Trust Co., but has an individual cause of action based on the bank's special duty to Parrett under the circumstances.
Therefore, we reverse the judgment of the district court and remand this matter to the district court for further proceedings.
REVERSED AND REMANDED WITH DIRECTION.
SHANAHAN, Justice, dissenting.
Although I agree with the general proposition of law that a corporate officer, as a signatory for a check drawn on the corporation's account, may, under certain circumstances, be a "customer" within Neb.U. C.C. § 4-402 (Reissue 1980) for the purpose of a depository bank's liability for wrongful dishonor of the corporation's check, the facts alleged by Parrett fail to provide the circumstances necessary for application of that general proposition of law.
The allegations of Parrett's amended petition supply the following facts: Parrett was an authorized signatory on the checking account of P & P Machinery; there was a history of credit transactions between P & P Machinery and the bank; Parrett had given the bank his personal guaranty for obligations of P & P Machinery; and Parrett was a corporate officer and the principal shareholder of P & P Machinery.
What is not supplied in Parrett's petition, and cannot be reasonably inferred from the allegations, are those facts which permit application of the general proposition of law regarding a corporate officer as a "customer" of a bank in reference to the bank's wrongful dishonor of a corporate check signed by the officer.
Although Kendall Yacht Corp. v. United California Bank, 50 Cal.App.3d 949, 123 Cal.Rptr. 848 (1975), seems to be the basis for determining whether Parrett was the bank's customer, the salient facts found in Kendall are absent from Parrett's case. The checking account stood in the name of P & P Machinery, an existing corporation with a long history of credit transactions with the bank. However, in those transactions nothing indicates that the bank ever disregarded the corporate existence of P & P Machinery and treated Parrett as the principal or otherwise identified Parrett as the individual responsible for satisfaction of the corporation's obligations to the bank. Actually, the facts alleged and inferences therefrom are to the contrary. Although Parrett gave his guaranty for P & P Machinery's obligations to the bank, on no occasion did the bank enforce, or threaten to enforce, Parrett's guaranty. Mere existence of the guaranty is neutral in Parrett's case. Moreover, Parrett did not, either voluntarily or in response to the bank's request or demand, use his funds or property to pay P & P Machinery's indebtedness to the bank. Regarding P & P Machinery, there is no allegation or justifiable inference that the corporation was "undercapitalized," a "transparent shell" as a corporation in name only without the issuance of stock, or lacked "viability as a separate and distinct legal entity." Kendall, supra. None of those Kendall conditions exist in Parrett's situation. Hence, there is no basis to conclude that Parrett was the bank's customer at *380 the time the check was dishonored. The district court was correct in sustaining the bank's demurrer and dismissing Parrett's action.
Since Parrett was not the bank's customer in the subject transaction, there is no need to consider the question about special duty in relation to a shareholder's cause of action. Consequently, the judgment of the district court should have been affirmed.