Justice ALBIN,
dissenting.
Today, the majority announces that a bank can make material misrepresentations to a party, facilitate the fleecing of the party by his partner, and yet have no accountability and face no liability. The majority comes to that fundamentally unjust result by a crabbed reading of the Uniform Commercial Code (UCC), by ignoring UCC jurisprudence, and by consigning to irrelevance one *526 of our recent precedents, City Check Cashing Inc. v. Mfrs. Hanover Trust Co., 166 N.J. 49, 62, 764 A.2d 411 (2001), which allows for common-law causes of action against banks for negligent misrepresentation. I do not believe that the UCC or the common law immunizes a bank from liability when it violates established norms of commercial conduct. I therefore respectfully dissent.
I.
A.
Plaintiff Brendan Allen brought suit against defendant Oritani Savings Bank for common-law negligence and fraud and for violations of the UCC, N.J.S.A. 12A:4A-204, and the Consumer Fraud Act, N.J.S.A. 56:8-1 to -2.13.1 need not repeat the complex and convoluted procedural history, which the majority has ably described. I will focus only on the issue before the Court.
The trial court granted summary judgment in favor of Oritani on Allen’s negligence claim, and the Appellate Division reversed. We granted certification “limited to the issue whether [Allen] can maintain a common law non-customer negligence claim against the bank.” 210 N.J. 260, 43 A.3d 1166 (2012).
Whether Oritani is entitled to summary judgment on Allen’s negligence claim requires that we view the summary-judgment record in 'the light most favorable to Allen, the non-moving party. With that standard in mind, here are the relevant facts.
B.
Allen and Asnel Diaz Sanchez agreed to pursue a joint business venture through an existing corporation, ADS Associates Group, Inc., of which Sanchez was the sole stockholder. In October 2003, Allen and Sanchez visited Oritani Savings Bank with the purpose of opening a joint business account. Allen explained to Oritani’s branch manager, Marlene Fabregas, that he wanted a joint account so that no funds could be removed from the account without his written consent. He also explained that this safeguard was to *527 protect his business investment. Fabregas told Allen that only-one person or entity could be listed as the account holder. She assured Allen, however, that the account would be established in a way so that no monies could be removed without his consent.
Using a bank form, Fabregas prepared a corporate resolution— for Sanchez’s signature — that designated Allen as treasurer of ADS Associates. Fabregas also completed a “Business Account Signature Card” that required the signatures of both Allen and Sanchez “in the payment of funds or in the transaction of any business for this account.” In other words, by agreement, Oritani was not authorized to permit any transaction from the new account without Allen’s written consent, including a transfer of funds from the account. In accordance with that arrangement, Fabregas had checks printed with two signature lines, one for Allen and one for Sanchez. Based on Fabregas’s representations, Allen placed $28,750 of his personal funds into the bank account.
Less than two weeks later, unbeknownst to Allen, the bank allowed Sanchez, on his own, to begin making Internet transfers out of the ADS account until it was bled dry. Fabregas never hinted to Allen that the bank made an exception to the two-signature rule with Internet transfers. Allen only became aware of the transfers when a check issued on the account bounced.
II.
The majority contends that Allen’s general claim of negligence is not supported by allegations that Oritani made misrepresentations in violating its duty of due care. A fair reading of the complaint says otherwise.
In Count Four of the complaint, titled “General Liability, Negligence, and Gross Negligence,” Allen asserted that “Oritani had a duty to Allen based upon the promises made directly by the branch manager and representations [she] made.” Accordingly, Oritani had “a duty to reasonably and diligently enforce the dual signature security provisions contracted for with regard to the ADS account.” In support of that claim, Allen specifically alleged *528 the misrepresentations — the promises — made by the bank manager:
[Paragraph] 11. The manager assured ALLEN several times during the filling out of the paperwork that there was no way [SANCHEZ] could remove any money from the account without Allen’s consent.
[Paragraph] 12. The manager did this with full knowledge that Defendant ORITANI could not live up to this promise.
[Paragraph] 18. Oritani assured ALLEN each and every time requested to send statements that it did not matter because there was no way that money could be removed from the account without ALLEN’s signature on a check.
[Paragraph] 19. Oritani knew that representation to be false at the time it was made.
[Paragraph] 45. This method of security requiring both signatures was purposely undertaken to prevent either holder from obtaining funds from the ADS account without the express and written consent of BOTH ALLEN and SANCHEZ which consent was to be evidenced by both parties’ signatures being submitted to ORITANI before any funds could be accessed or disbursed on behalf of ADS.
[Paragraph] 50. In fact, ORITANI made affirmative misrepresentations to both ADS and ALLEN in connection with the opening up and creation of the ADS account by representing to all parties that the dual signature requirement would be strictly and reasonably enforced diligently, with regard to each and every transaction.[1]
The majority’s strained parsing of the complaint does not obscure what is self-evident — that Allen’s negligence claim is premised, in part, on the repeated misrepresentations made by the bank manager. Those misrepresentations are particularized in accordance with Rule 4:5-8. Oritani was on notice of a negligent-misrepresentation cause of action, consistent with the pleading practices in this state. See Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989) (holding that under our liberal notice-pleading standards, “a reviewing court searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary” (citation and internal quotation marks omitted)). That Allen’s negligence claim is based partly on Oritani’s *529 misrepresentations is not undermined by Allen’s claims alleging fraud and misrepresentation and consumer fraud in other counts.
Allen’s cross-petition for certification, moreover, made clear that the non-customer negligence claim rested on Oritani’s misrepresentations. In the cross-petition, which we granted, Allen stated that “there was clearly a special relationship between Oritani and Allen.... Oritani made representations to [Allen] which [Allen] relied upon to [his] detriment, i.e.[,] that Oritani would treat this as a two signature account for [Allen’s] protection, which misrepresentations were breached.” On this basis, Allen claimed he could “maintain a negligence cause of action.” Significantly, Oritani did not challenge Allen’s characterization that his negligence claim was premised on the bank’s misrepresentations. The majority raises this objection on its own.
In short, Allen fairly pled a cause of action for negligence based on misrepresentations made by the bank. The record does not allow that fact to be willed away. I now turn to the substantive issues before the Court.
III.
Although the Court granted certification solely to resolve “whether [Allen] can maintain a common law non-customer negligence claim against Oritani,” 210 N.J. 260, 43 A.3d 1166, the majority also resolves an issue on which the Court denied certification — whether Allen was a bank customer able to pursue a UCC claim under N.J.S.A 12A:4A-204. That issue — technically not before us — the majority wrongly decides. I now believe that we erred in not granting certification on Allen’s UCC claim. Indeed, Allen was correct: the Appellate Division erroneously affirmed the dismissal of his UCC claim based on the mistaken notion that he was not a customer of Oritani.
The majority concludes that Allen has no UCC claim because ADS Associates — not Allen — was Oritani’s customer, and that because he was not a customer, he has no common-law negligence claim either. The majority is wrong on both counts. First, *530 substantial authority supports the view that Allen was a bank customer for UCC purposes. Second, contrary to the position taken by the majority, courts have overwhelmingly held that UCC Article 4A does not bar common-law claims and that it is not the exclusive remedy for harms related to funds transfers. In particular, Article 4A is not the exclusive remedy when a bank induces a person to open and place money in an account based on misrepresentations. Last, Allen’s common-law negligence claim finds support not only in City Check Cashing but also in the Restatement (Second) of Torts (1977), and in cases from this Court and other courts across the country.
IV.
A.
A person “having an account with a bank” is a “customer” for the purposes of Article 4 (bank deposits) and Article 4A (funds transfers). N.J.S.A. 12A:4-104(a)(5); N.J.S.A. 12A:4A-105(l)(c). Although, under Article 4 and Article 4A, a customer is not limited to a person “having an account with a bank,” that definition of a customer is common to both Articles.[2] No case suggests that a person “having an account with a bank” could be a customer for Article 4 purposes but not for Article 4A purposes.
The majority contends that Allen was not a bank customer under Article 4A. According to the majority, a person is not a customer unless his name is on the title of the bank account. I would not follow the majority’s formalistic definition of “customer,” a definition that has been rejected by a number of courts.
*531 Indeed, the Arizona Supreme Court in Schoenfelder v. Arizona Bank, 165 Ariz. 79, 796 P.2d 881, 889 (1990), held that a person who is a mandatory signatory on an account held by a corporation can stand as a customer in his own right. That case is strikingly similar to the one before us and refutes the majority’s position.
In Schoenfelder, the plaintiff arranged to sell a parcel of land to a corporate developer who intended to finance a construction project with a bank loan. Id. at 884. The plaintiff and the corporate developer opened an account in the developer’s name in a bank where the developer had other accounts. Ibid. The plaintiff wanted to ensure that the loan proceeds would be used only on the project. Ibid. To that end, the new account was structured so that the plaintiffs signature would be required for the withdrawal of any funds. Ibid. The corporate account’s signature card indicated that the plaintiffs signature and either of two other signatures were necessary for a funds withdrawal. Ibid. The bank paid on checks that bore the plaintiffs forged signature. Ibid. On that basis, the plaintiff sued the bank, seeking relief under Article 4 of the UCC. Id. at 885.
The Arizona Supreme Court concluded that the plaintiff was the bank’s “customer” under the UCC. Id. at 889. In reaching that conclusion the Arizona high court took “into account all the material circumstances surrounding the opening of the account, the acknowledged intent of the parties to the transaction, the bank’s knowledge of that intent, and the nature of the bank’s transactions with the parties.” Id. at 886. The Schoenfelder court reasoned that a “fact-intensive analysis” is required and that the focus should not be on “the mere technicalities of the named owner of the account, and the formal organization of that entity.” Id. at 887. It also observed that in those cases in which courts held that signatories were not bank customers, the banks did not have “knowledge of a unique arrangement between the plaintiff and the named account owner regarding ownership of the funds.” Id. at 886. Accordingly, the plaintiff was entitled to sue the bank for the forged checks. Id. at 889. The plaintiff in Schoenfelder *532 unquestionably would have had a cause of action if the bank had paid on checks where a necessary signature was missing from the signature line.
In another similar case, the Arkansas Supreme Court allowed a cause of action under Article 4 for a bank’s failure to enforce a dual-signature requirement, finding Lloyd Hobbs a customer even though the account was not in his name. First Nat’l Bank v. Hobbs, 248 Ark. 76, 450 S.W.2d 298, 301-02 (1970). In that case, Hobbs owned a motel franchise and contracted with a businessman to lease and operate the motel. Id. at 299. They agreed that all revenues would be deposited into a corporate account at a local bank. Id. at 299-300. They explained their business arrangement to the bank manager, who agreed to open an account that would require two signatures on all checks. Id. at 300. Later, the bank allowed money to be withdrawn from the account by check without two authorized signatures. Ibid. The Arkansas high court found that, for Article 4 purposes, Hobbs was a customer because he had “opened the account, and directed the manner in which it was to be handled.” Id. at 301.
A number of cases are in accord with Schoenfelder and Hobbs and have rejected the majority’s narrow definition of customer. See, e.g., Murdaugh Volkswagen, Inc. v. First Nat’l Bank, 801 F.2d 719, 725 (4th Cir.1986) (holding that, despite corporation’s name on account, sole stockholder was herself customer and able to bring UCC suit against bank because she personally guaranteed corporation’s obligations); Parrett v. Platte Valley State Bank & Trust Co., 236 Neb. 139, 459 N.W.2d 371, 379 (1990) (holding same for principal shareholder); Kendall Yacht Corp. v. United Cal. Bank, 50 Cal.App.3d 949, 956, 123 Cal.Rptr. 848 (1975) (holding same for husband-and-wife-owned corporation).
Schoenfelder and Hobbs, Murdaugh Volkswagen, Parrett and Kendall Yacht Corp. are persuasive in defining when a person is a customer under the UCC. I would adopt the Schoenfelder totality-of-the-circumstances test for determining when a person is a UCC bank customer. That test considers “the relationship of the *533 parties to the bank, the purpose of the account, and the bank’s knowledge of those facts.” Schoenfelder, supra, 796 P.2d at 887. Here, Oritani orchestrated the opening of the account — requiring Allen’s signature for a withdrawal of funds. The purpose of the dual-signature requirement was to prevent Sanchez from emptying the account without Allen’s knowledge. Oritani not only misrepresented to Allen that his interest in the account would be protected by the dual-signature requirement, but it also facilitated the fraud by allowing Sanchez to act unilaterally.
Those facts were sufficient to justify bringing this matter before a jury for its ultimate determination.
B.
As indicated earlier, had this Court not denied certification on Allen’s UCC claims, I would have held that Allen was a customer. I would also have held that he survives summary judgment on his UCC claim under N.J.S.A. 12A:4A-204(1), which provides that: “If a receiving bank accepts a payment order issued in the name of its customer as sender which is ... not authorized ... the bank shall refund any payment.... ” (emphasis added). The transfers by Sanchez were not “authorized” because they were expressly forbidden by the agreement (expressed in the Signature Card) that two signatures are required for any transaction. Thus, Allen’s UCC claim should have been allowed to proceed to trial.
I would rectify our mistake in denying certification on the UCC claim even at this late date. I would grant certification now. Justice delayed is better than a complete denial of justice.
V.
A.
Concerning the issue on which we granted certification, I would hold that Allen is entitled to proceed to trial on his common-law negligence claims pursuant to City Check Cashing, supra, 166 N.J. at 62, 764 A.2d 411. There, we held that a bank may owe a *534 common-law duty — not inconsistent with the UCC — when “the facts establish a special relationship between the parties created by agreement, undertaking or contact.” Here, there was an agreement — “a meeting of the minds between two or more parties on a given proposition.” See ibid. The bank, Allen, and Sanchez all agreed that financial transactions on the account required two signatures. The bank also engaged in an undertaking. It willingly made “a pledge to take ... particular action” — not to release funds without two signatures. See ibid. Last, “whether a contact creates a duty is determined by its nature and surrounding circumstances.” Ibid. The communications made by the bank to Allen surely gave rise to a duty. See ibid.
This case falls into all three City Check Cashing categories: Oritani entered into an agreement with Allen, undertook to refrain from releasing funds without his signature, and clearly had contact with him. After having told Allen that his signature was required for any funds to be taken from the account, “[Oritani] had a duty to disclose its Internet policy to Allen when [the account] was opened,” specifically “the availability and effect of Internet banking, and how it could result in an electronic transfer of funds from the account without two-signature authorization.” That is, Oritani had a duty to be truthful with Allen. Certainly, Oritani should not have told Allen that funds could not be released from the account without his written signature when it knew that statement was false concerning Internet funds transfers.
Oritani’s misrepresentations are a basis for liability under our tort law. A defendant is liable for negligent misrepresentation when he “supplies false information for the guidance of others in their business transactions, ... if he fails to exercise reasonable care or competence in obtaining or communicating the information.” Petrillo v. Bachenberg, 139 N.J. 472, 484, 655 A.2d 1354 (1995) (alteration in original) (quoting Restatement (Second) of Torts, supra, § 552(1)) (holding attorney liable to non-client for negligently omitting negative information from report on which non-client relied in purchasing real property).
*535 The Restatement standard, which we adopted in Petrillo, applies to any statements made to others and is not limited to a defendant’s customers or clients. Ibid. Whether or not Allen was a customer, the bank was “liabl[e] for pecuniary loss caused to [Allen] by [his] justifiable reliance upon the [false] information.” Restatement (Second) of Torts, supra, § 552(1).
That duty does not imply (as the majority claims) that Oritani had a duty “to detect potentially fraudulent conduct by Sanchez and to report it to Allen,” ante at 523, 99 A.3d at 362. The breach of the bank’s duty was complete when the false statements were made at the account opening.
I now turn to address why a cause of action for negligent misrepresentation is not inconsistent with the UCC.
B.
At its core, the majority’s rationale is that because Allen “clearly lacks the status of a customer,” a negligence cause of action, in addition to those provided in Article 4A, would inherently “contravene” the UCC. Ante at 518-19, 99 A.3d at 359. However, “[n]ot all common law claims are per se inconsistent with [Article 4A’s] regime.” Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 89 (2d Cir.2010). It is well-established that “Article 4-A ... is not the exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer.” Sheerbonnet, Ltd. v. Am. Express Bank, Ltd., 951 F.Supp. 403, 409 (S.D.N.Y.1995).
The UCC’s drafters and our Legislature intended that common-law claims would survive — and indeed supplement — the UCC unless a UCC provision bars a particular claim. See N.J.S.A. 12A:1-103(b) (providing that “unless displaced by the particular provisions of the [UCC], the principles of law and equity, including ... fraud [and] misrepresentation ... supplement its provisions”). The Drafting Committee’s comment cited by the majority, U.C.C. 4A-102 official cmt. (1989), cannot undermine the text of the statute.
*536 The majority, moreover, overreads the comment, which states that “resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in [that] Article.” U.C.C. 4A-102 official cmt. By its own language, the comment provides that a plaintiff may resort to principles of law or equity that are not inconsistent with Article 4A. As Thomas Baxter, the Chair of the Subcommittee on Proposed UCC Article 4A, explained, “the Drafting Committee intended that Article 4A would be supplemented, enhanced, and in some places, superceded by other bodies of law.” Thomas C. Baxter, Jr. & Raj Bhala, The Interrelationship of Article JA with Other Law, 45 Bus. Law. 1485,1485 (1990). Therefore, “electronic funds transactions are governed not only by Article 4A, but also by common law.” 3 James J. White & Robert S. Summers, Uniform Commercial Code § 22-3, at 8 (5th ed.2008).
Consistent with this point, courts “have held that plaintiffs may turn to common law remedies to seek redress for an alleged harm arising from a funds transfer where Article 4A does not protect against the underlying injury or misconduct alleged.” Patco Constr. Co. v. People’s United Bank, 684 F.3d 197, 215-16 (1st Cir.2012) (permitting claims for breach of contract and of fiduciary duty). Those common-law claims include causes of action for negligence, breach of contract, and fraud. See, e.g., Fischer & Mandell LLP v. Citibank, N.A, 632 F.3d 793, 797 (2d Cir.2011) (permitting claim for breach of contract); Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1276 (11th Cir.2003) (permitting claims for conversion and unjust enrichment); Regions Bank v. Wieder & Mastroianni, P.C., 423 F.Supp.2d 265, 269 (S.D.N.Y.2006) (permitting claims for conversion and breach of fiduciary duty), remanded for reconsideration on other issue, 253 Fed.Appx. 52 (2d Cir.), aff'd on remand, 526 F.Supp.2d 411 (S.D.N.Y.2007) ; Miller v. Union Planters Bank, N.A, 61 U.C.C. Rep.Serv.2d (Callaghan) 328, at 10-11, 2006 WL 3391095 (S.D.Miss.2006) (“[Plaintiffs] common law claims [for negligence, conversion, breach of contract and of fiduciary duty] are not inconsistent ... because Article 4A does not expressly prohibit the remedies [he] is *537 seeking.”); Dubai Islamic Bank v. Citibank, N.A., 126 F.Supp.2d 659, 666 (S.D.N.Y.2000) (permitting claims for negligence and unjust enrichment); Sheerbonnet, supra, 951 F.Supp. at 412, 414 (permitting claims for conversion, tortious interference with contract, and unjust enrichment); cf. Hanover Ins. Co. v. M & T Bank, 783 F.Supp.2d 809, 815 (E.D.Va.2011) (“[UCC § 4-406(f) ] does not bar [plaintiffs] breach of contract claim because [plaintiff] is not a ‘customer’____”).
Indeed, claims alleging negligence in the opening of an account that are not inconsistent with Article 4A may go forward. See Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 224 (4th Cir.2002) (holding “[plaintiffs] negligence claims, insofar as they challenge the opening and management of [the] account” are not inconsistent with Article 4A); Gilson v. TD Bank, N.A., 73 U.C.C. Rep.Serv.2d (Callaghan) 430, at 27 (S.D.Fla.2011) (holding that negligence claim alleging “lack of care during the account openings, not the wire transfers” is not inconsistent with Article 4A, “which governs only wire transfers”).
Instead of eliminating common-law causes of action across the board, as the majority does, other courts have recognized that “[t]he exclusivity of Article 4-A is deliberately restricted to ‘any situation covered by particular provisions of the Article.’ ” Sheerbonnet, supra, 951 F.Supp. at 408 (quoting N.Y. U.C.C. 4A-102 official cmt.). Article 4A does not cover misrepresentations that induce a customer to have a relationship with a bank. The provisions of Article 4A “are transactional, aimed essentially at resolving conflicts created by erroneous instruction or execution of payment orders.” Id. at 412. In these circumstances, the tort of negligent misrepresentation is not inconsistent with the purpose of Article 4A.
The drafters of Article 4A did not intend to repeal the law of misrepresentation, or allow banks a free hand to deceive the public, so long as a funds transfer is incidentally involved and the bank otherwise complies with Article 4A. See Regions Bank, supra, 345 F.3d at 1276 (“It could hardly have been the intent of *538 the drafters to enable a party to succeed in engaging in fraudulent activity, so long as it complied with ... Article 4A.”); Regions Bank, supra, 423 F.Supp.2d at 269 (holding that “a rule established to govern wire transfers would not restrict a party’s fiduciary duties,” nor sanction conversion); Dubai Islamic Bank, supra, 126 F.Supp.2d at 666 (accepting plaintiffs argument that “a bank is not immune from common law liability arising from its tortious conduct simply because wire transfers may be involved”).
In the related context of Article 4, moreover, courts have repeatedly held that negligent-misrepresentation claims are not displaced by the UCC. See, e.g., Avanta Fed. Credit Union v. Shupak, 354 Mont. 372, 223 P.3d 863, 871 (2009) (“[T]he customer who detrimentally relies on the negligent misrepresentations of the bank’s agents, and thereby suffers damage, is not without recourse.”); Holcomb v. Wells Fargo Bank, N.A, 155 Cal.App.4th. 490, 498, 66 Cal.Rptr.2d 142 (2007) (“There is nothing in the [UCC] prohibiting a claim based on a depositor’s detrimental reliance on a bank employee’s incorrect statements.”), appeal denied, No. S157668, 2007 Cal. LEXIS 14459 (Dec. 19, 2007); First Ga. Bank v. Webster, 168 Ga.App. 307, 308 S.E.2d 579, 581 (1983) (holding that negligent-misrepresentation action against bank not barred by UCC).
Finally, contrary to the suggestion by the majority, a non-customer cause of action is not precluded just because, in certain instances, the non-customer is accorded broader rights than a customer. See Hanover Ins. Co. v. M & T Bank, 783 F.Supp.2d 809, 815 (E.D.Va.2011) (holding that Article 4 statute of repose, UCC § 4 — 406(f), “does not bar [plaintiffs] breach of contract claim because [plaintiff] is not a ‘customer’ ”).
VI.
City Check Cashing envisioned this case. A negligence action premised on a bank’s misrepresentations is not in conflict with the UCC and is a basis for liability. Bank deception is not a practice condoned by the UCC or by our common law. The majority has *539 denied Allen his rightful day in court. I therefore respectfully dissent.
For reversal/reinstatement — Chief Justice RABNER and Justices LaVECCHIA, PATTERSON and FERNANDEZ-VINA and Judges RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned) — 6.
For affirmance — Justice ALBIN — 1.

 These paragraphs were all incorporated into Count Four of the complaint.

 Compare NJ.S.A. 12A:4-104(a)(5) (“'Customer' means a person having an account with a bank or for whom a bank has agreed to collect items, including a bank that maintains an account at another bank.”), with N.J.S.A. 12A:4A-105(i)(c) (" ‘Customer’ means a person, including a bank, having an account with a bank or from whom a bank has agreed to receive payment orders.’’). Thus, the relevant definitions in both Articles are the same.